627 A.2d 1019

Boyce Cornelius ATKINSON

v.

STATE of Maryland.

No. 148, Sept. Term, 1992.

Court of Appeals of Maryland.

July 21, 1993.

200

Robert L. Miller, Bel Air, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

Maryland Code (1977, 1992 Repl.Vol.), Transportation Article, § 21–902 provides that a person "may not drive or attempt to drive" a vehicle while intoxicated, while under the influence of alcohol, while under the influence of a drug or a combination of alcohol and a drug, or while under the influence of a controlled dangerous substance.[1] The term "drive"

---

1. In its entirety, § 21–902 provides:

   "(a) *Driving while intoxicated.*—A person may not drive or attempt to drive any vehicle while intoxicated.

has several meanings, as provided for in § 11–114 of the Transportation Article: " 'Drive' means to drive, operate, move, or be in actual physical control of a vehicle. . . ." The issue in the instant case is whether the appellant, who was sitting intoxicated and asleep in the driver's seat of his vehicle, lawfully parked on the shoulder of the road, with the keys in the ignition but the engine off, was properly found to be in "actual physical control" of his vehicle and thereby convicted of driving while under the influence of alcohol. Because we believe he was not in "actual physical control" of his vehicle, as contemplated by the statute, we reverse his conviction.

## I.

■   The appellant, Boyce Cornelius Atkinson, was arrested on March 7, 1992 and charged with common law battery and driving while intoxicated in violation of § 21–902 of the Transportation Article.[2] The case was tried in the Circuit Court for Harford County. Atkinson pled not guilty and consented to trial by an agreed statement of facts based on the arresting

---

(b) *Driving while under the influence of alcohol.*—A person may not drive or attempt to drive any vehicle while under the influence of alcohol.

(c) *Driving while under influence of drugs or drugs and alcohol.*—(1) A person may not drive or attempt to drive any vehicle while he is so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol that he cannot drive a vehicle safely.

(2) It is not a defense to any charge of violating this subsection that the person charged is or was entitled under the laws of this State to use the drug, combination of drugs, or combination of one or more drugs and alcohol, unless the person was unaware that the drug or combination would make him incapable of safely driving a vehicle.

(d) *Driving while under influence of controlled dangerous substance.*—A person may not drive or attempt to drive any vehicle while he is under the influence of any controlled dangerous substance, as that term is defined in Article 27, § 279 of the Code, if the person is not entitled to use the controlled dangerous substance under the laws of this State."

**2.** The battery charge arose when Atkinson and the officer both fell while Atkinson was being escorted to the officer's car for transport. This charge ultimately was *nol prossed.*

officer's police report.[3] In exchange for Atkinson's agreement to proceed on a statement of facts, the State agreed to *nolle prosequi* the battery charge and the § 21–902(a) charge of driving while intoxicated and proceed only with the lesser § 21–902(b) charge of driving under the influence of alcohol.

The statement of facts read into the record by the prosecutor was as follows:

"Your Honor, if the State were put to its burden of proof, it would produce the testimony of Harford County Sheriff's Deputy Thomas, who would testify that on March 7, 1992 at 7:00 P.M., while he was on routine patrol in the area of Abingdon Road near Route 40 in Harford County, Maryland, he observed a Jeep Wagoneer parked on the righthand shoulder of westbound Route 40.

The deputy approached the vehicle, displaying Florida registration JCG96F, and he observed the occupant to be slumped over in the driver's seat with the keys in the ignition and engine off.

The deputy attempted to get the driver's attention by knocking on the window. This action resulted in no reaction from the driver.

The deputy then opened the driver's door, which was unlocked, and shook the driver in an attempt to wake him. At this time, Deputy Thomas detected a strong odor of alcoholic beverage coming from the vehicle.

---

**3.** A defendant's agreement to proceed on an agreed statement of facts is essentially a trial by stipulation, at which generally no live witnesses are called. *See Barnes v. State,* 31 Md.App. 25, 354 A.2d 499 (1976) (Orth, J.) (comparing trial by an agreed statement of facts and evidence offered by way of stipulation); *Ingersoll v. State,* 65 Md.App. 753, 501 A.2d 1373, *cert. denied,* 306 Md. 70, 507 A.2d 184 (1986) (Robert M. Bell, J.) (discussing plea of not guilty accompanied by an agreed statement of facts). Although this procedure should not be used when there are significant witness credibility questions, we have approved of it in the past when the parties sought to argue solely legal issues at trial. *See, e.g., Covington v. State,* 282 Md. 540, 386 A.2d 336 (1978) (trial below was conducted upon a plea of not guilty accompanied by an agreed statement of facts).

Deputy Thomas was successful in awakening the subject and while talking to the subject, noted this person's speech was slurred, eyes bloodshot and glassy. He detected a very strong odor of alcoholic beverage coming from the individual's breath.

The driver produced a Florida driver's license which identified him as Boyce C. Atkinson, whom the deputy would identify as the Defendant seated to the far left of Defense counsel in Court this morning.

Deputy Thomas requested the Defendant to perform some field sobriety tests. The Defendant did not, stating he had a broken toe on his right foot. At that time, he was placed under arrest and placed in the patrol car of the deputy.

The deputy returned to the Jeep. At this time, he went back to the patrol car and while en route to the station, along with Deputy Thomas, the Defendant fell over in the back seat of the patrol car.

At that time, the patrol car was stopped to check on Mr. Atkinson's status. Deputy Thomas observed he wasn't [sic] breathing and he had a regular pulse, but he was unsuccessful in awakening the Defendant. He transported him to Fallston General Hospital in case there was need for medical attention.

Upon arrival at the hospital, the Defendant regained consciousness and was evaluated by the Emergency Room staff. He was read his DR 15 Rights. He refused to submit to any type of tests. He was then transported back to the Harford County Sheriff's Department and issued the appropriate traffic citations.

All events occurred in Harford County, Your Honor. That would be the Statement of Facts."

Although Atkinson agreed to this statement of facts, he argued that, as a matter of law, the evidence was insufficient to convict him. He asserted that the facts did not support a finding that he had driven under the influence of alcohol in violation of § 21–902(b) because he did not "drive, operate,

[or] move," his vehicle, nor was he in "actual physical control" of it. *See* § 11–114. After hearing arguments from both sides, the trial judge found that "the evidence [was] sufficient to conclude he was in actual physical control of the vehicle" while under the influence, and entered a finding of guilty under § 21–902(b) for driving under the influence of alcohol. He sentenced Atkinson to sixty days imprisonment, with all but fifteen days suspended, and fined him $500, with all but $250 suspended. The judge placed Atkinson on three years supervised probation with the condition that he consume no alcohol. Atkinson noted a timely appeal to the Court of Special Appeals. Before the Court of Special Appeals could consider the case, however, we issued a writ of certiorari on our own motion. *Atkinson v. State,* 329 Md. 337, 619 A.2d 547 (1993).

## II.

■ The test for sufficiency of the evidence to sustain a criminal conviction on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) (emphasis in original); *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830, 842 (1980). In this case, the essential element in doubt is whether Atkinson was in "actual physical control" of his vehicle while under the influence of alcohol, in violation of the § 21–902(b) prohibition against driving while under the influence of alcohol.

"Actual physical control" of a vehicle is one of four definitions included within the § 21–902(b) term "drive." *See* § 11–114. The other three definitions are "to drive, operate, [or] move" a vehicle. The legislature's definition of "drive" as meaning, among other things, "to drive," unquestionably engenders some confusion. That seemingly circular definition is obviously meant to connote what we typically think of as driving, while the other § 11–114 definitions encompass other,

less obvious, activities.[4]  In any event, "drive" (as a definition), "operate" and "move" are not at issue here, for each of these terms clearly connotes either some motion of the vehicle or some physical movement or manipulation of the vehicle's controls.  To "move" a vehicle plainly requires that the vehicle be placed in motion.  "Drive" (as a definition) and "operate" have previously been addressed by this Court as follows:

> " '[t]he term 'driving' is generally used to mean, in this connection, steering and controlling a vehicle while in motion;  the term 'operating,' on the other hand, is generally given a broader meaning to include starting the engine or manipulating the mechanical or electrical devices of a standing vehicle.' "

*Thomas v. State,* 277 Md. 314, 318, 353 A.2d 256, 258–59 (1976) (quoting *McDuell v. State,* 231 A.2d 265, 267 (Del.1967)).

No motion of the vehicle or movement or manipulation by the defendant is alleged in the instant case, and so the result we reach necessarily turns on the meaning of the phrase "actual physical control."  Although the term "actual physical control" also was present in the prior version of the statute at issue in *Thomas,* the Court there never addressed it because the State had failed to specifically charge Thomas with being in "actual physical control" of his vehicle.  The statute at issue in *Thomas* provided that

> "[i]t shall be unlawful for any person *to drive or attempt to drive or to be in actual physical control* of any vehicle within this State while his driving ability is impaired by the consumption of alcohol."  (Emphasis added).

Md.Code (1957, 1970 Repl.Vol., 1974 Cum.Supp.), Article 66½, § 11–902(b).  The Court essentially construed the statute as having two distinct prongs, a "driving" prong and an "actual physical control" prong.  Thus, while observing that "actual physical control" had its own independent meaning, the Court

---

4.  Another circular aspect of the statutory definition of "drive" is that Transportation Article § 11–114 defines "drive" as "to drive, *operate, move,* or be in actual physical control . . ." (emphasis added), yet § 11–141 defines "operate" as "to drive, as defined in this subtitle."

found that this meaning was not at issue in the case because the State had only charged Thomas with "driving," not with being in "actual physical control" of his vehicle.[5]  Applying only the § 11–902(b) "driving" prong, the Court concluded that the State had failed to prove that Thomas had actually "driven" the vehicle in which he sat.

Thomas's vehicle had been discovered by a police officer standing on the paved shoulder of a lighted ramp with its headlights on.  Thomas was either passed out or asleep in the driver's seat, with the windows up and the keys in the ignition, but the motor off.  The officer awakened Thomas, asked him to step out of the vehicle, and subsequently arrested him, charging him under § 11–902(b) with driving under the influence.  Analyzing his conviction only under the "driving" prong of § 11–902(b), we reversed, stating:

> "All the evidence in this case proves is that Thomas was in a vehicle by the side of a road, possibly intoxicated, at an early hour in the morning.  Left to conjecture is whether he drove the vehicle to that location after imbibing alcohol or whether he had parked it there, been picked up by some other individual, and then dropped off at the same spot. . . ."

*Id.* 277 Md. at 325, 353 A.2d at 262.  Thus, because it never reached the question of what constitutes "actual physical control," *Thomas* does not help us in our efforts today.

The only other Maryland appellate opinion addressing the behavioral aspect of the drunk driving statute is the Court of Special Appeals' decision in *Gore v. State,* 74 Md.App. 143, 536 A.2d 735 (Robert M. Bell, J.), *cert. denied,* 312 Md. 601, 541 A.2d 964 (1988).  In *Gore,* the current version of § 21–902 was at issue.  Like *Thomas, Gore* did not address the meaning of "actual physical control," although for a different reason.  In *Gore,* a police officer was dispatched to investigate a report of

---

**5.**  The present statute avoids this potential pitfall in charging by proscribing that a person may not "drive or attempt to drive" under the influence, § 21–902(b), and then defining "drive" in another section, § 11–114.  Under this statutory design, a person must only be charged with "driving" under § 21–902(b), this charge encompassing all the specific definitions of "drive" set out in § 11–114.

a man asleep behind the wheel of an automobile in a convenience store parking lot. Upon arrival, he found Gore passed out behind the wheel of his car. The engine was off, but the keys were in the ignition in the "on" position, and the alternator/battery light glowed red on the dashboard. The gear selector was in the "drive" position and the car's hood was warm to the officer's touch. The Court of Special Appeals concluded that this circumstantial evidence supported a rational inference by the factfinder that the appellant had actually driven his car while under the influence and upheld Gore's conviction under § 21–902(a). *Id.* 74 Md.App. at 149, 536 A.2d at 738–39. The court never had to determine whether, at the time he was apprehended, Gore was in "actual physical control" of his car.

Without guiding Maryland precedent, we begin our own analysis of what constitutes "actual physical control" with a brief review of the statute's evolution, noting, as we did in *Thomas,* that the term "actual physical control" was intended to describe a distinct type of behavior. Before the complete revision of Maryland's motor vehicle laws by Chapter 1007 of the Acts of 1943, § 199 of Article 56 made it unlawful for a person to "operate or drive or attempt to operate or drive a motor vehicle on the public highways of this State when [under the influence]." Pursuant to the 1943 revision, § 153 of Article 66½ provided only that "[i]t shall be unlawful for [any person under the influence] to drive or attempt to drive any vehicle or trackless trolley within the State." The revision deleted the term "operate" and removed the "public highways" restriction. This aspect of the statute remained the same until 1969, when the legislature added the term "actual physical control," so that the statute then made it illegal "to drive or attempt to drive *or to be in actual physical control* of any vehicle." *See* Ch. 158 of the 1969 Acts of Maryland, § 206(a) (emphasis added). In 1970, the General Assembly recodified § 206 as § 11–902 of Article 66½. *See* Ch. 534 of the 1970 Acts of Maryland. In 1977, § 11–902 was recodified as present § 21–902 of the new Transportation Article. *See* Ch. 14 of the 1977 Acts of Maryland, § 2. The

1977 recodification retained the "actual physical control" language, but moved it from the proscriptive language of § 21–902 to the definition of "drive" found in § 11–114. The current scheme, therefore, proscribes only "driving or attempting to drive," but "drive" is defined in § 11–114 as "drive, operate, move, or be in actual physical control of a vehicle...." One consequence of this organizational change is that it permits a defendant to be charged simply with "driving" while intoxicated or under the influence, this charge encompassing all the behavior described in the § 11–114 definition of "drive."

As for the General Assembly's addition of the term "actual physical control" in 1969, we note that it is a generally accepted principle of statutory construction that a statute is to be read so that no word or phrase is "rendered surplusage, superfluous, meaningless, or nugatory." *Management Personnel Servs. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310, 315 (1984). Accordingly, the words "actual physical control," particularly when added by the legislature in the disjunctive, indicate an intent to encompass activity different than, and presumably broader than, driving, operating, or moving the vehicle. The question, of course, is "How much broader?"

Many of our sister courts have struggled with determining the exact breadth of conduct described by "actual physical control" of a motor vehicle, reaching varied results. *See generally* Annotation, *What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance,* 93 A.L.R.3d 7 (1979 & 1992 Supp.). The Supreme Court of Ohio, for example, defined "actual physical control" as requiring that "a person be in the driver's seat of a vehicle, behind the steering wheel, in possession of the ignition key, and in such condition that he is physically capable of starting the engine and causing the vehicle to move." *City of Cincinnati v. Kelley,* 47 Ohio St.2d 94, 351 N.E.2d 85, 87–88 (1976) (footnote omitted), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1131, 51 L.Ed.2d 554 (1977). In Alabama, "actual physical control" was initially defined as "exclusive physical power, and present ability, to operate,

move, park, or direct whatever use or non-use is to be made of the motor vehicle at the moment." *Key v. Town of Kinsey,* 424 So.2d 701, 703 (Ala.Crim.App.1982) (citing *State v. Purcell,* 336 A.2d 223 (Del.Super.Ct.1975)). The court set out a three-part test for obtaining a conviction:

"1. Active or constructive possession of the vehicle's ignition key by the person charged or, in the alternative, proof that such a key is not required for the vehicle's operation;

2. Position of the person charged in the driver's seat, behind the steering wheel, and in such condition that, except for the intoxication, he or she is physically capable of starting the engine and causing the vehicle to move;

3. A vehicle that is operable to some extent."

*Id.* at 703–04. More recently, the Alabama Supreme Court abandoned this strict, three-pronged test, adopting instead a "totality of the circumstances test" and reducing the test's three prongs to "factors to be considered." *Cagle v. City of Gadsden,* 495 So.2d 1144, 1147 (Ala.1986).

At least one state, Idaho, has a statutory definition of "actual physical control." It is "being in the driver's position of the motor vehicle with the motor running or with the motor vehicle moving." Idaho Code § 18–8002(7) (1987 & 1991 Cum.Supp.); *Matter of Clayton,* 113 Idaho 817, 748 P.2d 401, 403 (1988). Even the presence of such a statutory definition has failed to settle the matter, however. While the Idaho statute is quite clear that the vehicle's engine must be running to establish "actual physical control," that state's courts have nonetheless found it necessary to address the meaning of "being in the driver's position." *See, e.g., State v. Woolf,* 120 Idaho 21, 813 P.2d 360, 362 (Ct.App.1991) (court upheld magistrate's determination that defendant was in driver's position when lower half of defendant's body was on the driver's side of the front seat, his upper half resting across the passenger side).

Because of the varying tests and the myriad factual permutations, synthesizing or summarizing the opinions of other

courts appears futile.[6] Still, some generalizations are valid. One can discern a clear view among a few states, for example, that "the purpose of the 'actual physical control' offense is [as] a preventive measure," *State v. Schuler*, 243 N.W.2d 367, 370 (N.D.1976), and that " 'an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public.' " *Id.* (quoting *Hughes v. State*, 535 P.2d 1023, 1024 (Okla.Crim.App.1975)) (both cases involved defendant seated behind the steering wheel of vehicle parked partially in the roadway with the key in the ignition). This view appears to stem from the belief that " '[a]n intoxicated person in a motor vehicle poses a threat to public safety because he "might set out on an inebriated journey at any moment." ' " *State v. Schwalk*, 430 N.W.2d 317, 319 (N.D. 1988) (quoting *Buck v. North Dakota State Hgwy. Comm'r*, 425 N.W.2d 370 (N.D.1988), in turn quoting *Martin v. Commissioner of Public Safety*, 358 N.W.2d 734, 737 (Minn.App. 1984)); *see also Berger v. District of Columbia*, 597 A.2d 407, 409 (D.C.1991) (stating in *dictum* that "[e]ven a drunk with the ignition keys in his pocket would be deemed sufficiently in control of the vehicle to warrant conviction."). In these states, the "actual physical control" language is construed as intending "to deter individuals who have been drinking intoxicating liquor from getting into their vehicles, except as passengers." *State v. Ghylin*, 250 N.W.2d 252, 255 (N.D.1977).

Courts pursuing this deterrence-based policy generally adopt an extremely broad view of "actual physical control." For example, on facts much akin to those of the instant case, the Supreme Court of Wyoming held that a defendant who was found unconscious in his vehicle parked some twenty feet off the highway with the engine off, the lights off, and the key in the ignition but off, was in "actual physical control" of the vehicle. *Adams v. State*, 697 P.2d 622, 625 (Wyo.1985). The court said:

---

**6.** For one effort in this regard, we would again refer the reader to the annotation at 93 A.L.R.3d 7 (1979 & 1992 Supp.).

> "An intoxicated person seated behind the steering wheel of an automobile is a threat to the safety and welfare of the public. The danger is less than that involved when the vehicle is actually moving; however, the danger does exist and the degree of danger is only slightly less than when the vehicle is moving. As long as a person is physically or bodily able to assert dominion in the sense of movement by starting the car and driving away, then he has substantially as much control over the vehicle as he would if he were actually driving it."

*Id.* (citations omitted).

■ We disagree with this construction of "actual physical control," which we consider overly broad and excessively rigid. Neither the statute's purpose nor its plain language supports the result that intoxicated persons sitting in their vehicles while in possession of their ignition keys would, regardless of other circumstances, always be subject to criminal penalty. In the words of a dissenting South Dakota judge, this construction effectively creates a new crime, "Parked While Intoxicated." *Petersen v. Department of Public Safety*, 373 N.W.2d 38, 40 (S.D.1985) (Henderson, J., dissenting). We believe no such crime exists in Maryland. Although the definition of "driving" is indisputably broadened by the inclusion in § 11–114 of the words "operate, move, or be in actual physical control," the statute nonetheless relates to *driving* while intoxicated. Statutory language, whether plain or not, must be read in its context. *NCR Corp. v. Comptroller*, 313 Md. 118, 125, 544 A.2d 764, 767 (1988). In this instance, the context is the legislature's desire to prevent intoxicated individuals from posing a serious public risk with their vehicles. We do not believe the legislature meant to forbid those intoxicated individuals who emerge from a tavern at closing time on a cold winter night from merely entering their vehicles to seek shelter while they sleep off the effects of alcohol. As long as such individuals do not act to endanger themselves or others, they do not present the hazard to which the drunk driving statute is directed. Thus, rather than assume that a hazard exists based solely upon the defendant's presence in

the vehicle, we believe courts must assess potential danger based upon the circumstances of each case. We therefore join other courts which have rejected an inflexible test that would make criminals of all people who sit intoxicated in a vehicle while in possession of the vehicle's ignition keys, without regard to the surrounding circumstances.

In *State v. Bugger,* 25 Utah 2d 404, 483 P.2d 442 (1971), the defendant was discovered asleep in his automobile which was parked on the shoulder of the road, completely off the travel portion of the highway. The engine was off, although there was no indication as to whether the keys were in the ignition or not. The court defined "actual physical control" as " 'existing' or 'present bodily restraint, directing influence, domination or regulation,' " and held that "the defendant at the time of his arrest was *not* controlling the vehicle, nor was he exercising any dominion over it." *Id.,* 25 Utah 2d 404, 483 P.2d at 443 (citations omitted and emphasis in original). The same court later explained that "actual physical control" was "intending to prevent intoxicated drivers from entering their vehicles except as passengers or *passive occupants* as in *Bugger....*" *Garcia v. Schwendiman,* 645 P.2d 651, 654 (Utah 1982) (emphasis added). In *Garcia,* the court held that the defendant was in "actual physical control" and not a "passive occupant" when he was apprehended while in the process of turning the key to start the vehicle. *Id.*

In *People v. Cummings,* 176 Ill.App.3d 293, 125 Ill.Dec. 514, 517, 530 N.E.2d 672, 675 (1988), the Illinois Court of Appeals also rejected a reading of "actual physical control" which would have prohibited intoxicated persons from entering their vehicles to "sleep it off." The court said:

"We can expect that most people realize, as they leave a tavern or party intoxicated, that they face serious sanctions if they drive. While the preferred response would be for such people either to find alternate means of getting home or to remain at the tavern or party without getting behind the wheel until sober, this is not always done. And while we can say that such people should have stayed sober or

planned better, that does not realistically resolve this all-too-frequent predicament.

For the intoxicated person caught between using his vehicle for shelter until he is sober or using it to drive home, [prior precedent] encourages him to attempt to quickly drive home, rather than to sleep it off in the car, where he will be a beacon to police.

We believe it would be preferable, and in line with legislative intent and social policy, to read more flexibility into [prior precedent]. In those rare instances where the facts show that a defendant was furthering the goal of safer highways by voluntarily 'sleeping it off' in his vehicle, and that he had no intent of moving the vehicle, trial courts should be allowed to find that the defendant was not 'in actual physical control' of the vehicle...."

*Id.*, 176 Ill.App.3d 293, 125 Ill.Dec. at 517, 530 N.E.2d at 675.

What may be an unduly broad extension of this "sleep it off" policy can be found in the Arizona Supreme Court's *Zavala v. State*, 136 Ariz. 356, 666 P.2d 456 (1983), which not only encouraged a driver to "sleep it off" *before* attempting to drive, but also could be read as encouraging drivers *already* driving to pull over and sleep. In *Zavala*, an officer discovered the defendant sitting unconscious in the driver's seat of his truck, with the key in the ignition, but off. The court concluded that "while the defendant remained behind the wheel of the truck, the pulling off to the side of the road and turning off the ignition indicate that defendant voluntarily ceased to exercise control over the vehicle prior to losing consciousness," and it reversed his conviction. *Id.*, 136 Ariz. 356, 666 P.2d at 458–59. The court reached this conclusion based on its belief that "it is reasonable to allow a driver, when he believes his driving is impaired, to pull completely off the highway, turn the key off and sleep until he is sober, without fear of being arrested for being in control." *Id.*, 136 Ariz. 356, 666 P.2d at 459. The Arizona Court of Appeals has since clarified *Zavala* by establishing a two-part test for relinquishing "actual physical control"—a driver must "place his vehicle away from the road pavement, outside regular traffic lanes, and ... turn off the

ignition so that the vehicle's engine is not running." *State v. Superior Court for Greenlee County,* 153 Ariz. 119, 735 P.2d 149, 152 (Ct.App.1987). This view, at least insofar as it excuses a drunk driver *who was already driving* but who subsequently relinquishes control, might be subject to criticism as encouraging drunk drivers to test their skills by attempting first to drive before concluding that they had better not.

We believe that the General Assembly, particularly by including the word "actual" in the term "actual physical control," meant something more than merely sleeping in a legally parked vehicle with the ignition off. As we have already said with respect to the legislature's 1969 addition of "actual physical control" to the statute, we will not read a statute to render any word superfluous or meaningless. *Sandefur,* 300 Md. at 341, 478 A.2d at 315. Thus, we must give the word "actual" some significance. Further, when interpreting a statute, we assume that the words of the statute have their ordinary and natural meaning, absent some indication to the contrary. *Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483, 485–86 (1992). We have no such contrary indications here, so we examine the ordinary meaning of "actual physical control." *Webster's Third New International Dictionary* 1706 (1986) defines "physical" as "relating to the body ... often opposed to *mental.*" (Emphasis in original). *Webster's* also defines "control" as "to exercise restraining or directing influence over." *Id.* at 496. Most importantly, "actual" is defined as "present," "current," "existing in fact or reality," and "in existence or taking place at the time." *Webster's* also contrasts "actual" with "potential and possible" as well as with "hypothetical." *Id.* at 220. By using the word "actual," the legislature implied a current or imminent restraining or directing influence over a vehicle. Accordingly, a person is in "actual physical control" if the person is presently exercising or is imminently likely to exercise "restraining or directing influence" over a motor vehicle while in an intoxicated condition.

We believe that, by using the term "actual physical control," the legislature intended to differentiate between those inebriated people who represent no threat to the public because they are only using their vehicles as shelters until they are sober enough to drive and those people who represent an imminent threat to the public by reason of their control of a vehicle. When the occupant is totally passive, has not in any way attempted to actively control the vehicle, and there is no reason to believe that the inebriated person is imminently going to control the vehicle in his or her condition, we do not believe that the legislature intended for criminal sanctions to apply.

■ As a practical matter, we recognize that any definition of "actual physical control," no matter how carefully considered, cannot aspire to cover every one of the many factual variations that one may envision. What constitutes "actual physical control" will inevitably depend on the facts of the individual case. The inquiry must always take into account a number of factors, however, including the following:

1) whether or not the vehicle's engine is running, or the ignition on;

2) where and in what position the person is found in the vehicle;

3) whether the person is awake or asleep;

4) where the vehicle's ignition key is located;

5) whether the vehicle's headlights are on;

6) whether the vehicle is located in the roadway or is legally parked.

No one factor alone will necessarily be dispositive of whether the defendant was in "actual physical control" of the vehicle. Rather, each must be considered with an eye towards whether there is in fact present or imminent exercise of control over the vehicle or, instead, whether the vehicle is merely being used as a stationary shelter. Courts must in each case examine what the evidence showed the defendant was doing or

had done, and whether these actions posed an imminent threat to the public.

■ Perhaps the strongest factor informing this inquiry is whether there is evidence that the defendant started or attempted to start the vehicle's engine. The policy of allowing an intoxicated individual to "sleep it off" in safety, rather than attempt to drive home, arguably need not encompass the privilege of starting the engine, whether for the sake of running the radio, air conditioning, or heater. Indeed, once an individual has started the vehicle, he or she has come as close as possible to actually driving without doing so and will generally be in "actual physical control" of the vehicle. Other factors may militate against a court's determination on this point, however. For example, a person asleep on the back seat, under a blanket, might not be found in "actual physical control," even if the engine is running. The location of the vehicle can be a determinative factor in the inquiry because a person whose vehicle is parked illegally or stopped in the roadway is obligated by law to move the vehicle, and because of this obligation could more readily be deemed in "actual physical control" than a person lawfully parked on the shoulder or on his or her own property. In sum, the primary focus of the inquiry is whether the person is merely using the vehicle as a stationary shelter or whether it is reasonable to assume that the person will, while under the influence, jeopardize the public by exercising some measure of control over the vehicle.

■ In the instant case, stipulations that Atkinson was in the driver's seat and the keys were in the ignition were strong factors indicating he was in "actual physical control." Balanced against these facts were the circumstances that the vehicle was legally parked, the ignition was off, and Atkinson was fast asleep. In view of the legal standards we have enunciated and the circumstances of the instant case, we conclude there was a reasonable doubt that Atkinson was in "actual physical control" of his vehicle, an essential element of the crime with which he was charged. *See Jackson*, 443 U.S.

at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573; *Tichnell,* 287 Md. at 717, 415 A.2d at 842.

It is important to bear in mind that a defendant who is not in "actual physical control" of the vehicle at the time of apprehension will not necessarily escape arrest and prosecution for a drunk driving offense. A person may also be convicted under § 21–902 if it can be determined beyond a reasonable doubt that before being apprehended he or she has actually driven, operated, or moved the vehicle while under the influence. *See* § 11–114. Those were the facts in the Court of Special Appeals' decision in *Gore v. State,* 74 Md.App. 143, 536 A.2d 735 (1988), discussed *supra,* where the court concluded that evidence of the ignition key in the "on" position, the glowing alternator/battery light, the gear selector in "drive," and the warm engine, sufficiently supported a finding that the defendant had actually driven his car shortly before the officer's arrival. *Id.* at 149, 536 A.2d at 738. Thus, our construction of "actual physical control" as permitting motorists to "sleep it off" should not be misconstrued as encouraging motorists to try their luck on the roadways, knowing they can escape arrest by subsequently placing their vehicles "away from the road pavement, outside regular traffic lanes, and ... turn[ing] off the ignition so that the vehicle's engine is not running." *Superior Court for Greenlee County,* 153 Ariz. 119, 735 P.2d at 152 (citing *Zavala,* 136 Ariz. 356, 666 P.2d at 459). While we wish to discourage intoxicated individuals from first testing their drunk driving skills before deciding to pull over, this should not prevent us from allowing people too drunk to drive, and prudent enough not to try, to seek shelter in their cars within the parameters we have described above.

In the instant case, had there been evidence to establish that Atkinson had driven prior to his apprehension, he might properly have been convicted—not because of what he was doing when the officer arrived on the scene, but because of what the factfinder could have inferred he had done previously, *i.e.,* actually drive, operate, or move his vehicle while intoxicated. While many forms of circumstantial evidence potentially could have lead to this conclusion, no such evidence

was adduced in Atkinson's case. There is no evidence that Atkinson did anything but climb into his vehicle, put the key in the ignition, and go to sleep. Without such evidence, and in light of our previous conclusion that Atkinson was not in "actual physical control" of the vehicle when apprehended, we must reverse his conviction.

*JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY REVERSED. COSTS TO BE PAID BY HARFORD COUNTY.*