959 A.2d 105

**Kevin George DiGENNARO**

**v.**

**STATE of Maryland.**

**No. 435, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Oct. 29, 2008.

Amy E. Brennan (Nancy S. Forster, Public Defender, on brief), for Appellant.

Cathleen C. Brockmeyer (Douglas F. Gansler, Atty. Gen., on brief), for Appellee.

Panel: KRAUSER, C.J., WOODWARD, and CHARLES E., MOYLAN, JR. (Specially Assigned), JJ.

KRAUSER, C.J.

Appellant Kevin George DiGennaro was transporting gravel, in his truck, to a quarry, when he accidentally released nearly two tons of that material on the highway. After stopping briefly, he drove on to the quarry without marking the area or notifying the quarry of the spill. The spillage later caused a motorist, traveling on the same road, to lose control of her vehicle and collide with an oncoming car, fatally injuring a passenger in her vehicle.

Appellant was subsequently charged with manslaughter by vehicle, reckless driving, negligent driving, failing to secure tailgate, driving an unsecured load, and failure to remove fallen debris within a reasonable time. After a bench trial, the Circuit Court for Harford County found him guilty of manslaughter by vehicle, declaring that he was grossly negligent in the operation of his truck for having failed either to warn other drivers of the spill by "mark[ing] the area" or to notify the quarry of the spill so that it could be promptly removed.[1]

Claiming that neither of the two actions that he failed to take fell within the statutory definition of "operating" a motor vehicle and that his conduct was not, in any event, grossly negligent, appellant requests that we reverse his conviction for manslaughter by vehicle. We shall do so.

### Facts

On the morning of March 21, 2005, appellant was driving a dump truck northbound on Route 136 in Harford County, hauling a load of gravel to a quarry in Churchville. In

---

1. The circuit court also found him guilty of failing to remove fallen debris within a reasonable time, but that conviction is not the subject of this appeal.

attempting to lower the truck's third axle, he, in the circuit court's words, "hit[ ] the wrong button," accidentally releasing approximately 3,480 pounds of gravel onto Route 136. The spill comprised three separate concentrations of gravel that, all together, covered over 800 feet of the northbound lane of Route 136.

Observing, in his side mirror, gravel spewing from the rear of his truck, appellant pulled over to the side of Route 136, just south of the entrance to the Churchville quarry. When he got out of the truck, appellant saw what he later described to police as a "small amount of gravel" directly behind his vehicle. After kicking some of the gravel off the road, he got back into the truck and drove to the quarry.

As he entered the quarry, appellant placed a call, on his cell phone, to James Enders, the owner of the contracting firm that employed him, and told him, Enders would later recall, that he had "sprinkled" some gravel onto the road leading into the quarry. Concluding from appellant's words and tone that there was no immediate cause for concern, Enders responded that a "loader" would "come out" and scrape the stray stones from the entrance road. The call ended, and appellant, after emptying his truck of its cargo, departed for Perryville, Maryland, to pick up a supply of sand.

Shortly after the spill occurred, Heather Sandmeier was driving her car northbound on Route 136, accompanied by her two small sons, Devon and Alex. Proceeding along a route she customarily drove to her mother-in-law's home, Ms. Sandmeier did not see the gravel left by DiGennaro's truck before her car entered the first concentrated stretch of gravel. By that time, it was too late. Skidding on the gravel beneath her vehicle, she lost control of her car and spun into the path of an oncoming BMW.

The BMW collided with Sandmeier's car. Ms. Sandmeier and her son, Alex, suffered substantial injuries but survived the accident. Tragically, Devon did not. The force of the accident snapped his neck, and he died at the scene of the accident.

Dispatched to the accident scene, Trooper Douglas Forrester of the Maryland State Police traveled along the same portion of gravel-covered roadway that Ms. Sandmeier had. As he passed through it, he, too, lost control of his car, but only momentarily. The scene struck him as "surreal." "[A] part of the roadway," he explained, "was completely covered with stone and gravel . . . like it was snow covered."

After being contacted by the State Police, James Enders called appellant and informed him that the State police wanted him to meet them immediately in the parking lot of the WaWa store at the corner of Routes 136 and 543. When appellant arrived at that location, the troopers read him his Miranda warnings, after which a trooper asked him "what had happened that morning." Appellant responded that he had accidentally dropped some gravel from his truck, and that, after pulling over, he noticed a "small amount" of gravel on the road.

The troopers then drove appellant to the accident scene, stopping at the spot where appellant told them he had stopped his truck to view the discharged gravel. Asked by one of the troopers whether he could see the heaviest concentration of gravel, which, of the three separate accumulations, was farthest from where they were standing, appellant said he could. And, later at trial, one of the troopers testified that, looking south along Route 136, he had "no [trouble] at all" seeing the full span of all three concentrations of gravel.

Appellant was convicted of manslaughter by vehicle and sentenced to seven years' imprisonment.[2]

## Decision Below

Although the circuit court found that appellant's accidental release of the gravel onto the road did not amount to gross negligence, an element of vehicular manslaughter, it did find that his subsequent failure either to notify the quarry of the

---

2. The circuit court, for sentencing purposes, merged appellant's conviction for failure to remove debris within a reasonable time into the vehicular manslaughter count.

spilled gravel, so that it could be "immediately clean[ed] up," or "to mark the area to warn approaching motorists" of its presence, constituted gross negligence and, on that basis, found him guilty of vehicular manslaughter. The court explained:

He had an obligation to clear the highway. That may not have been physically possible, given the time before the accident. In failing that, I believe that he had a duty to clearly mark the area so that any approaching motorists would be aware of the highly dangerous situation created by a substantial amount of loose gravel on the highway. He failed to do that. He failed even to notify the quarry apparently when he reported his load, that, in fact, a dangerous situation existed within minutes of their business. . . . So therefore, I will find that he did act in a grossly negligent manner by failing to mark the area to warn approaching motorists, or even to notify the quarry in an attempt to get someone out there to immediately clean it up. And I also find that this grossly negligent conduct did, in fact, cause the death of Mr. Sandmeier in this case. So I find him guilty of that particular crime.

### Discussion

Appellant contends that the evidence adduced at trial was insufficient to support his conviction of manslaughter by vehicle under § 2–209 of the Criminal Law Article of the Maryland Code Annotated (2002 Repl.Vol.), Maryland's vehicular manslaughter statute. That statute provides that "a person may not cause the death of another as a result of the person's driving, operating, or controlling a vehicle or vessel in a grossly negligent manner." *See* Md.Code. Ann., Crim. Law § 2–209(b).

After observing that the vehicular manslaughter statute "makes a distinction between . . . driving [and] operating," the circuit court found that, in failing either to mark the area where gravel had spilled from his truck or to notify the quarry of the gravel's presence, appellant was grossly negligent in the

"operation of" his vehicle. Appellant disagrees. He maintains his failure to do either did not constitute "operation" of a vehicle under § 2–209 and therefore that his conviction for manslaughter by vehicle cannot stand. We agree.

In determining whether the circuit court was correct in finding that appellant's conduct constituted "operation" of his vehicle, we must determine what the term "operate," as it is used in § 2–209, means. Unfortunately, neither § 2–209 of the Criminal Law Article, nor any other section of the Maryland Criminal Law Article, defines "operate." *See* Md.Code, Crim. Law Art. Nor does the statute's legislative history or any case law applying the statute shed any light on the meaning of that term.

We therefore turn to the legislative cousin of the Criminal Law Article, the Transportation Article (containing as it does vehicular laws with criminal penalties), which does define "operate." We do so, guided by the time-honored rule of statutory construction that, when " 'statutes ... involve the same subject matter, have a common purpose, and form part of the same system, we read them *in pari materia* and construe them harmoniously.' " *Chen v. State*, 370 Md. 99, 106, 803 A.2d 518 (2002) (quoting *Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 481, 784 A.2d 569 (2001)).

Section 11–114 of the Transportation Article states that " 'operate' ... means to drive, as defined in this subtitle." Then, in § 11–141 of that subtitle "drive" is defined as follows: " 'drive' means to drive, operate, move, or be in actual physical control of a vehicle, including the exercise of control over or the steering of a vehicle."

In *Atkinson v. State*, 331 Md. 199, 627 A.2d 1019 (1993), the Court of Appeals noted that "[t]he legislature's definition of 'drive,' [in § 11–114], as meaning, among other things, 'to drive,' unquestionably engenders some confusion." *Id.* at 205, 627 A.2d 1019. It then attempted to dispel that confusion, by observing that, while " 'drive' ... [is] obviously meant to connote what we typically think of as driving ... the other

§ 11–114 definitions encompass other, less obvious activities."
*Id.* at 205–06, 627 A.2d 1019.

It then went on to clarify the distinction between "driving" and "operating" by stating that "the term 'driving' is generally used to mean ... steering and controlling a vehicle while in motion," while the term " 'operating' ... is generally given a broader meaning to include starting the engine or manipulating the mechanical or electrical devices of a standing vehicle." *Id.* at 206, 627 A.2d 1019 (quoting *Thomas v. State*, 277 Md. 314, 318, 353 A.2d 256 (1976)).

The conduct which underlay appellant's conviction for vehicular manslaughter, namely, his failure either to mark the area where gravel had spilled from his truck or to notify the quarry of the presence of this gravel, had nothing to do with either starting his truck's engine or manipulating its mechanical or electrical devices. Hence, in failing to take either of the aforementioned actions, appellant was not "operating" his vehicle, as that term has been construed by the Court of Appeals. In sum, as logical or even as desirable as it might be to extend the meaning of the term "operate" to include the removal or remediation of the very dangers created by the operation of a vehicle, we have no statutory or decisional basis to do so.

Furthermore, to do so would violate a fundamental rule of statutory construction, that "a statute, particularly one of a penal nature, will not be 'extend[ed] ... to cases not plainly within the language used.' " *Testerman v. State*, 170 Md.App. 324, 340, 907 A.2d 294 (2006) (quoting *State v. Fleming*, 173 Md. 192, 196, 195 A. 392 (1937)). Because appellant's actions did not plainly fall within the activity proscribed by the language of § 2–209, we cannot now expand that section to include appellant's actions without violating this venerable canon of statutory construction, and contravening a fundamental tenet of due process: notice by the State of the conduct proscribed. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) ("[A] penal statute [must] define the criminal offense with sufficient definiteness

that ordinary people can understand what conduct is prohibited. . . .").

Finally, we do not question that appellant had an obligation to remediate the hazard created when he spilled gravel from his truck onto a public roadway, and we are painfully aware that his failure to satisfy this obligation produced tragic consequences. But, appellant was prosecuted for vehicular manslaughter, not for common law manslaughter, and his conviction of that offense required an interpretation of "operate," as used in § 2–209, clearly at odds with the way this term is commonly understood and has heretofore been interpreted and applied.

Therefore, we hold that appellant's failure to mark the gravel he had spilled onto a public roadway or notify the quarry of the spill did not constitute "operating . . . a motor vehicle" under § 2–209. Accordingly, we reverse his conviction of manslaughter by vehicle without reaching the issue of whether his conduct was grossly negligent.

**JUDGMENT OF CONVICTION FOR MANSLAUGHTER BY VEHICLE REVERSED. ALL OTHER JUDGMENTS AFFIRMED. COSTS TO BE PAID BY HARFORD COUNTY.**