59 P.3d 837

**Shelly POTTER, Plaintiff–Appellee, Cross Appellant,**

v.

**ARIZONA DEPARTMENT OF TRANSPORTATION, Motor Vehicle Division; Mary Peters, Director; and Stacey Stanton, Division Director, Real Parties in Interest, Defendants–Appellants, Cross Appellees.**

No. 1 CA–CV 02–0078.

Court of Appeals of Arizona, Division 1, Department E.

Dec. 24, 2002.

Review Denied May 30, 2003.

Janet Napolitano, Attorney General By John C. Dutton, Jr., Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellants, Cross Appellees.

Weingart & Penrod By Jeremy L. Phillips, Tempe, Attorney for Plaintiff–Appellee, Cross Appellant.

## OPINION

TIMMER, Presiding Judge.

¶ 1 Can a police officer have reasonable grounds to believe that an impaired motorist has actual physical control of a vehicle after that person parks to "sleep off" the effects of alcohol or drug intoxication? We answer that question affirmatively in this appeal by the Arizona Department of Transportation, Motor Vehicle Division ("MVD") from the superior court's judgment reversing an administrative law judge's ("ALJ") decision to suspend Shelly Potter's driver's license for her refusal to submit to a breathalyzer test. Because the record sufficiently supports the ALJ's decision, we reverse the superior court's judgment and reinstate the suspension order.

¶ 2 Potter has cross-appealed the superior court's denial of an award of her attorney's fees pursuant to Arizona Revised Statutes ("A.R.S.") section 12–348(A)(2) (1992). In order to obtain an award of fees under that provision, an applicant must prevail in a court proceeding to review a state agency decision. *Id.* In light of our disposition of the appeal, Potter is no longer the prevailing party in the case, and the issue raised in the cross-appeal is therefore moot.

## BACKGROUND

¶ 3 On September 30, 2000, at approximately 2:19 a.m., Tempe Police Officer C. Stant responded to a call about a possible intoxicated driver at a Chevron station. Upon arriving at the station, the officer found Potter's vehicle stopped in a non-designated parking spot with the driver's closed door pinned against a raised curb. The headlights were activated and although the engine was turned off, the keys remained in the ignition. Officer Stant observed Potter seemingly asleep in the tilted-back driver's seat. He also noticed four open containers of alcohol in the car.

¶ 4 Officer Stant tapped on the car window a couple of times to get Potter's attention so that he could question her. Potter reacted by sitting up, grabbing the steering wheel with her left hand, placing her right hand on the ignition key and trying to start the car. She also said, "I'm sorry officer, let me move my car." The officer told her to take her hands off the steering wheel and asked her to step out of the car.

¶ 5 After Potter exited the car, Officer Stant observed that she had bloodshot, watery eyes and that her breath smelled of alcohol. She also had difficulty explaining where she was and where she had been. Upon questioning, Potter stated that she had been drinking around midnight and, after driving a few blocks, had parked her car to sleep until a friend arrived to pick her up. Potter refused to take field sobriety tests, as requested by Officer Stant. The officer then arrested her for driving under the influence ("DUI") of alcohol.

¶ 6 At the police station, Officer Stant asked Potter to take a breathalyzer test, which she refused by telling the officer, "I don't care. I don't care what you do with my license. I don't care. I'll go to jail. I'm not taking your test." Although the officer advised Potter that her license would be suspended for one year if she refused to take the test, she did not change her position.

¶ 7 At a subsequent civil driver's license suspension hearing, an ALJ suspended Potter's license pursuant to our implied consent law, A.R.S. § 28–1321 (1998), which mandates license suspension if an arrestee suspected of driving or having actual physical control of a vehicle while under the influence of intoxicating liquor or drugs refuses to submit to a blood, breath, or urine test.[1] The superior court vacated the suspension order because it concluded the evidence showed that Potter had surrendered control of her car by the time Officer Stant approached her, and that Officer Stant could not have reasonably believed that Potter had actual physical control of the car. This appeal followed.

## STANDARD OF REVIEW

¶ 8 The superior court reviewed the ALJ's decision to determine if it was arbitrary, capricious, or involved an abuse of discretion. *See, e.g., Havasu Heights Ranch and Dev. Corp. v. Desert Valley Wood Products, Inc.*, 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App.1990) (citation omitted). The court was required to consider the evidence in the light most favorable to sustaining the ALJ's findings of fact, *see Golden Eagle Distributors, Inc. v. Ariz. Dep't of Econ. Sec.*, 180 Ariz. 565, 566, 885 P.2d 1130, 1131 (App. 1994), and affirm if substantial and competent evidence supported it. A.R.S. § 12–910(E) (Supp.2001); *Caretto v. Ariz. Dep't of Transp.*, 192 Ariz. 297, 300, 965 P.2d 31, 34 (App.1998) (citation omitted). Because the sufficiency of the record to support a driver's license suspension order is a question of law, we review the court's judgment de novo. *See Shaffer v. Ariz. State Liquor Bd.*, 197 Ariz. 405, 409, ¶ 20, 4 P.3d 460, 464 (App.2000).

## DISCUSSION

¶ 9 MVD was required to prove by a preponderance of evidence that Officer Stant had reasonable grounds to believe that Potter had driven or had actual physical control of her vehicle while intoxicated. *Caretto*, 192 Ariz. at 299, 965 P.2d at 33. Reasonable grounds existed if the officer had knowledge of "facts and circumstances which would warrant the same belief in a prudent person." *Barrett v. Thorneycroft*, 119 Ariz. 389, 391, 581 P.2d 234, 236 (1978).

¶ 10 The time of day, the location of Potter's car at a service station and outside a designated parking space, the activation of her headlights, her location in the driver's seat, her attempt to start the car when awakened, her statement to the officer that she would move the car, and her admission that she had driven to the Chevron station, together with the evidence of intoxication, would lead a prudent person to believe that Potter had either driven her car or had actual physical control of it while intoxicated. *See Barrett*, 119 Ariz. at 391–92, 581 P.2d at 236–37. Thus, the facts adduced before the

---

1.  At the license suspension hearing, the ALJ was limited to deciding whether:
    1. A law enforcement officer had reasonable grounds to believe that either:
    (a) The person was driving or was in actual physical control of a motor vehicle in this state either:
    (i) While under the influence of intoxicating liquor or drugs.

    (ii) If the person is under twenty-one years of age, with spirituous liquor in the person's body.
    . . . .
    2. The person was placed under arrest.
    3. The person refused to submit to the test.
    4. The person was informed of the consequences of refusal.
    A.R.S. § 28–1321(K).

ALJ supported a finding that Officer Stant had reasonable grounds to believe that Potter had been driving or had actual physical control of her car while intoxicated.

¶ 11 Potter argues, however, that the above-described facts cannot constitute reasonable grounds for believing that she had actual physical control over her car while intoxicated because she had entered the "safe harbor" first recognized by our supreme court in *State v. Zavala*, 136 Ariz. 356, 666 P.2d 456 (1983). In that case, a patrolman had discovered the defendant parked in a truck off the highway, unconscious, hanging partially from the driver's side window, and with evidence of vomit on his mouth and shirt. *Id.* at 357, 666 P.2d at 457. The truck engine was turned off, although the key remained in the ignition. *Id.* Upon being awakened, the defendant physically resisted the patrolman's attempt to speak with him, but did not attempt to start the truck. *Id.* The state charged the defendant with violating A.R.S. § 28–692(A) (now A.R.S. § 28–1381(A)) by driving under the influence of intoxicating liquor, and a jury convicted him of the offense. *Id.*

¶ 12 The issue on appeal was whether the defendant was in actual physical control of the truck while intoxicated. *Id.* at 358, 666 P.2d at 458. The supreme court held that the element of actual physical control is shown when a defendant has "the apparent ability to start and move the vehicle," and not when a defendant is "physically unable to start the car, as would be the case with an unconscious or sleeping motorist." *Id.* at 359, 666 P.2d at 459 (citation omitted). Because the defendant was not in actual physical control of the truck when discovered by the patrolman, the court held that the defendant could not be convicted of DUI on that basis. *Id.*

¶ 13 Potter contends, and the superior court agreed, that no prudent person would have believed that she had actual physical control over her car in light of her location off the road, the fact that the engine was switched off, and her state of slumber. She further asserts that her reaction upon awakening did not constitute reasonable grounds to believe she had actual physical control of her car because the officer engineered that reaction by tapping on the window after she

had surrendered control of her car. At oral argument, Potter clarified her position by arguing that under the above-described circumstances, Officer Stant lacked probable cause to arrest her for DUI and was therefore not authorized to request a breathalyzer test. Consequently, she contends, the ALJ erred by suspending her license for refusing the test. We disagree with these contentions.

¶ 14 After deciding *Zavala*, the supreme court rejected application of a bright-line rule to decide whether an impaired driver had actual physical control of a vehicle. *State v. Love*, 182 Ariz. 324, 327, 897 P.2d 626, 629 (1995) ("It is unwise to proceed down a path on which we attempt to identify 'black letter' criteria for establishing actual physical control as a matter of law in each and every case."). Rather, the applicability of the safe harbor is properly left to the fact finder after considering the totality of the circumstances. *Id.; see also State v. Dawley*, 201 Ariz. 285, 287, ¶ 4, 34 P.3d 394, 396 (App.2001) (noting *Love's* "totality" approach a departure from *Zavala's* bright-line test). We are not aware of any authority placing a burden on a police officer to determine the ultimate applicability of the safe harbor before effecting an arrest. It is doubtful the officer would even know the "totality of the circumstances" at that juncture. Indeed, the *Zavala* court inferentially rejected Potter's contention by noting that probable cause existed to arrest the unconscious driver pulled off the highway in that case, even though the safe harbor eventually applied to immunize him from conviction for DUI. *Zavala*, 136 Ariz. at 358, 666 P.2d at 458; *see also Barrett*, 119 Ariz. at 391–92, 581 P.2d at 236–37 (holding location of car off highway, position of driver slumped over steering wheel, and keys in ignition provided reasonable grounds to require breathalyzer test).

¶ 15 Even if an arresting officer is ultimately proved wrong in his or her belief that a driver was in actual physical control of a vehicle while intoxicated, if the officer had reasonable grounds for the belief and arrests the driver, the officer can request a breathalyzer test. If the arrestee refuses the test and is informed of the consequences of refusal, that person's driver's license is subject to suspension.

¶ 16 We also reject Potter's contention that Officer Stant could not base his belief that she had actual physical control of the car on her actions upon awakening, because the officer caused her to react after she had entered the safe harbor. The officer properly approached Potter's car and tapped on her window to fulfill his duty to investigate the report of an intoxicated driver. *See Zavala,* 136 Ariz. at 359, 666 P.2d at 459 ("Nothing we say here should indicate that the officers acted improperly in removing the defendant from the cab of the truck. Indeed, they would have been derelict in their duty had they not done so under these circumstances."); *State v. Bainch,* 24 Ariz.App. 140, 142, 536 P.2d 709, 711 (1975) (holding police officer had duty to investigate the circumstances of an individual seemingly sleeping or unconscious on a bus bench in downtown city late at night). As part of his investigation, the officer properly considered Potter's reaction in deciding whether she had "relinquished control and no longer presented a danger to [herself] or others," *Love,* 182 Ariz. at 327, 897 P.2d at 629, just as he assessed her demeanor and speech after she exited the car. We do not discern error.

¶ 17 Finally, we reject Potter's position because substantial and competent evidence supports the suspension order regardless of Officer Stant's belief that she had actual physical control of her car while parked at the Chevron station. The ALJ properly suspended Potter's license if the officer had reasonable grounds to believe that she was in actual physical control of her car *or had been driving* while intoxicated. A.R.S. § 28–1321(A), (K). In *Love,* the supreme court clarified that "even where a defendant is determined to have relinquished actual physical control, if it can be shown that such person drove while intoxicated to reach the place where he or she was found, the evidence will support a judgment of guilt."[2] 182 Ariz. at 327–28, 897 P.2d at 629–30. Thus, the safe harbor does not immunize an impaired driver from prosecution for DUI if the state can prove that the person had driven while intoxicated before surrendering control of his or her vehicle. *Id.; State ex rel. O'Neill v. Brown,* 182 Ariz. 525, 527, 898 P.2d 474, 476 (1995) (holding state can obtain DUI conviction by proving circumstantially that defendant drove while intoxicated to place where he relinquished actual physical control of vehicle).

¶ 18 Potter told Officer Stant that she had been drinking around midnight and had driven to the Chevron station before deciding to pull over and call a friend for a ride. The officer testified that Potter's admission formed a basis for his determination that she had been driving while impaired. Thus, even assuming the officer lacked reasonable grounds to believe that Potter was in actual physical control of her car while parked at the Chevron station, because substantial and competent evidence supported his belief that she had driven to the station while intoxicated, the ALJ did not abuse his discretion by suspending Potter's license.

## CONCLUSION

¶ 19 We hold that the safe harbor recognized by our supreme court to aid the fact finder to determine whether a defendant had actual physical control of a vehicle does not preclude suspension of an arrestee's driver's license for violating the implied consent law if the arresting officer had reasonable grounds to believe that an impaired motorist exercised such control. Because substantial and competent evidence supported the ALJ's finding that the arresting officer in this case had reasonable grounds to believe that Pot-

2. At oral argument, Potter contended that the above-quoted language from *Love* means only that impaired drivers cannot enter the safe harbor by merely pulling off the road and turning off the ignition. Any other interpretation, Potter argues, would destroy the entire purpose of the safe harbor because impaired drivers would lack any motivation to pull over, stop, and sleep it off if they could be convicted for driving to that location while intoxicated. But the court in *State ex rel. O'Neill v. Brown,* 182 Ariz. 525, 527, 898 P.2d 474, 476 (1995), cited in *Love* to support the challenged quotation, squarely addressed and rejected Potter's argument. The *O'Neill* court held that "*Zavala* was never meant to insulate a drunk driver from a driving charge. Insulation from a charge of being in actual physical control was its express purpose." 182 Ariz. at 527–28, 898 P.2d at 476–77. Thus, contrary to Potter's view, the supreme court has unequivocally held that entry into the safe harbor does not shield an impaired driver from a DUI conviction if the state proves that the defendant drove while intoxicated. *Id.*

ter had actual physical control of her car while intoxicated, and the evidence further supported a belief that Potter had driven while intoxicated, we reverse the superior court's judgment and reinstate the ALJ's order suspending Potter's license.

¶ 20 Because Potter is no longer the prevailing party in this case, we need not consider her cross-appeal, which challenged the trial court's refusal to award attorney's fees to her as the prevailing party under A.R.S. § 12–348(A)(2).

CONCURRING: CECIL B. PATTERSON, JR. and G. MURRAY SNOW, JJ.