IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,                 )
                                       )        2 CA-CR 2001-0445
                    Appellee,          )        DEPARTMENT B
                                       )
          v.                           )        O P I N I O N
                                       )
DANIEL HERIBERTO RIVERA,               )
                                       )
                    Appellant.         )
_____    )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20011419

Honorable Patricia G. Escher, Judge
Honorable Howard Hantman, Judge

AFFIRMED

---

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Consuelo M. Ohanesian                          Phoenix
                                                           Attorneys for Appellee


Susan A. Kettlewell, Pima County Public Defender
  By John F. Palumbo                                                    Tucson
                                                           Attorneys for Appellant

---

E S P I N O S A, Chief Judge.

¶1          Appellant Daniel Heriberto Rivera was convicted after a jury trial of driving while

under the influence of an intoxicant (DUI) with a minor present; aggravated driving with a blood

alcohol concentration of .10 or greater with a suspended, revoked, or restricted license; aggravated

driving with a blood alcohol concentration of .10 or greater with two or more prior DUI convictions; and two counts of endangerment.[1] The trial court suspended imposition of sentence and placed Rivera on concurrent, three-year terms of probation for each conviction. On appeal, he challenges the three DUI-based convictions, contending the state violated his due process rights by trying him both on the theory that he had been the driver and on the alternative theory that he had been a passenger in temporary but actual control of the vehicle, when the grand jury had indicted him only on the former theory. We affirm.

I.

¶2        The evidence, viewed in the light most favorable to supporting the verdicts, State v. Nihiser, 191 Ariz. 199, 953 P.2d 1252 (App. 1997), revealed the following. Shortly after midnight on April 7, 2001, Rivera fled on foot from a car that had come to rest after veering off the road and onto a raised median. The accident damaged the car, uprooted a traffic sign, and showered debris onto oncoming traffic. A civilian stopped to assist and encountered Rivera's girlfriend, E., and her eight-year-old daughter, A. E. told the civilian she had not been driving. When police officers arrived, E. told Deputy Krygier that Rivera, her live-in boyfriend, had been driving the car after they had left a bowling alley where he had been drinking beer. She gave the deputy their nearby home address, and officers found Rivera there a short time later. He admitted he had been in an accident but stated, "You guys can't prove I was driving." Rivera was arrested for DUI, and his blood was drawn at 1:35 a.m., a sample of which was later shown to have an

---

[1]The statute was later amended to reduce the legal blood alcohol concentration to under .08. A.R.S. § 1381(A)(2); 2001 Ariz. Sess. Laws, ch. 95, § 5.

2

alcohol concentration of .161. Rivera's driver's license was revoked at that time, and he had previously been convicted of two other DUI offenses committed in 1997 and 1998.

¶3        One of the responding officers relayed a condensed version of the foregoing evidence to the grand jury on April 13, 2001. Although the evidence presented to the grand jury identified Rivera as being the driver, the pertinent counts of the indictment alleged that he "drove or was in actual physical control of [the] vehicle" (emphasis added). This language mirrored the DUI statute on which those charges were based, A.R.S. § 28-1381(A), which provides, "It is unlawful for a person to drive or be in actual physical control of a vehicle in this state under any of the following circumstances . . . ." (Emphasis added).

¶4        Subsequently, in a letter he apparently received on July 16, Rivera's counsel learned that E. was claiming that she, not Rivera, had been driving the car at the time of the incident.[2] Based on that letter, counsel filed a motion dated August 10 to dismiss the case for lack of probable cause to arrest Rivera. The trial court denied the motion after a hearing on August 27 at which E. testified that she had been driving and that Rivera had caused the accident by grabbing the steering wheel.

¶5        Anticipating a discrepancy in trial testimony over who had been driving, the state interviewed A. for the first time on the afternoon of August 29, the day before trial, and learned that she, too, would testify that E. had been driving, rather than Rivera. On August 30, as trial was about to begin, the state announced that it was proceeding on two alternative theories: either that Rivera had been the driver or that he had been in actual physical control when his actions as

---

[2]The record is conflicting as to whether defense counsel received the letter on July 16 or whether the letter was dated July 16 and he learned of it sometime before August 10.

a passenger caused the accident. Rivera moved on due process grounds to preclude any theory of prosecution not presented to the grand jury. The trial court denied the motion.

¶6        At trial, both E. and A. testified that E. had been driving when they left the bowling alley; that, after arguing with E., Rivera had ordered her to pull over; and that Rivera had grabbed the steering wheel just before the accident. Their testimony was inconsistent with that of the civilian witness who had stopped to assist, who reported that E. had denied being the driver, and of Deputy Krygier, who testified that E. had twice told him that Rivera had been driving. The state argued to the jury that it could find Rivera guilty on the theory that he had been the driver or, if it believed E. had been driving, it could find Rivera guilty on the theory of actual physical control. The jury returned a unanimous verdict of guilty on all counts, but the form of verdict did not reveal whether the jurors had determined who had been behind the wheel.

II.

¶7        Rivera argues his due process rights under the federal and state constitutions were violated because his DUI-based convictions may have been for crimes for which he was not indicted. Although we generally review a trial court's ruling on a motion to dismiss the indictment for an abuse of discretion, we review Rivera's due process claims de novo. State v. Rosengren, 199 Ariz. 112, 14 P.3d 303 (App. 2000); see also In re U. S. Currency of $315,900.00, 183 Ariz. 208, 902 P.2d 351 (App. 1995) (constitutional questions reviewed de novo).

¶8        It is axiomatic that "[c]onviction upon a charge not made would be sheer denial of due process." DeJonge v. Oregon, 299 U.S. 353, 362, 57 S. Ct. 255, 259, 81 L. Ed. 278, 282 (1937). Article II, § 24 of the Arizona Constitution establishes that "[i]n criminal prosecutions, the accused shall have the right to . . . demand the nature and cause of the accusation against him,

4

[and] to have a copy thereof." The Sixth Amendment to the United States Constitution provides an equivalent right. However, we do not find that any of these constitutional protections were denied Rivera. Evidence both before the grand jury and at trial established that he had either driven or been in actual physical control of the car, which, we conclude, are two ways of committing a single DUI offense.

¶9    As previously stated, § 28-1381(A) provides: "It is unlawful for a person to drive or be in actual physical control of a vehicle in this state under any of the following circumstances . . . ." The phrase "actual physical control" has never been defined in Arizona's DUI statutes, State v. Dawley, 201 Ariz. 285, ¶3, 34 P.3d 394, ¶3 (App. 2001), but it has been the focus of an evolving series of court decisions. See State v. Love, 182 Ariz. 324, 897 P.2d 626 (1995); State v. Zavala, 136 Ariz. 356, 666 P.2d 456 (1983); State v. Webb, 78 Ariz. 8, 274 P.2d 338 (1954); Potter v. Ariz. Dep't of Transp., 204 Ariz. 73, 59 P.3d 837 (App. 2002); Dawley. Love, Zavala, Webb, and Potter addressed factual situations in which persons found in parked vehicles could possibly be guilty of DUI by remaining in actual physical control. Dawley presented a slightly different scenario, in which a person was found behind the driver's seat of a vehicle he contended was mechanically inoperable.[3] These cases broadly demonstrate that by including "actual physical control," the legislature intended to extend the DUI statutes to encompass those situations in which a person who is not actually driving nonetheless poses an equivalent risk. See Love, 182 Ariz. at 327, 897 P.2d at 629 (factfinder should "weigh the myriad of

---

[3]At issue in Dawley was a jury instruction patterned on Zavala and Love; Dawley presented a previously unconsidered fact pattern and illustrated the pitfalls of defining actual physical control based on case law arising from different facts. Dawley.

circumstances" in each case to determine whether defendant "presented a danger to himself or others"); Webb, 78 Ariz. at 11, 274 P.2d at 339 (purpose of "actual physical control" provision is to "enable the drunken driver to be apprehended before he strikes"); Dawley, 201 Ariz. 285, ¶9, 34 P.3d 394, ¶9 (defendant had actual physical control if "potential use of the vehicle presented a real danger to himself or others").

¶10        By speaking in Dawley of driving and actual physical control as alternative "theor[ies] of culpability," we did not mean to suggest that each was an independent crime. Dawley, 201 Ariz. 285, ¶10, 34 P.3d 394, ¶10. Were that true, any person guilty of driving under the influence under typical circumstances would also necessarily be guilty of a second offense—being in actual physical control in the moments before starting the ignition and beginning to drive. This absurd result is avoided if "driving" and "actual physical control" are understood to be alternative (and not mutually exclusive) ways of violating the DUI laws by either driving or non-driving behavior. State ex rel. O'Neill v. Brown, 182 Ariz. 525, 527, 898 P.2d 474, 476 (1995) (each DUI offense "may be committed in two separate ways," either by driving or actual physical control). We find it instructive that driving and actual physical control appear together in the same sentence rather than in separately numbered subsections. Cf. State v. Sanders, 205 Ariz. 208, 68 P.3d 434 (App. 2003) (due process violated when trial court permitted mid-trial amendment of indictment charging aggravated assault based on A.R.S. § 13-1203(A)(3), knowingly touching victim, to § 13-1203(A)(2), placing victim in apprehension of injury).

¶11        Of course, a person who drives a vehicle actually physically controls it; driving is a subset of actual physical control. See Brown, 182 Ariz. at 527, 898 P.2d at 476 ("'actual physical control' portion is broader" than driving portion of statute). Presumably for that reason,

6

the aforementioned Arizona cases discussing actual physical control have involved conduct other than driving. Although § 28-1381(A) is written in the disjunctive, this case illustrates the peril of treating driving and actual physical control as two offenses rather than as two ways of committing a single offense. In the absence of a jury instruction defining driving, the act E.'s and A.'s testimony described—a passenger's grabbing the steering wheel of a moving car and causing it to jump onto the median—is conduct that arguably could or could not constitute driving.[4] However, at a minimum, as discussed in paragraph 16, infra, it certainly constituted evidence of actual physical control.

III.

¶12  Due process requires that a defendant be given "'notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge.'" State v. Blakley, 204 Ariz. 429, ¶47, 65 P.3d 77, ¶47 (2003), quoting Cole v. Arkansas, 333 U.S. 196, 201, 68 S. Ct. 514, 517, 92 L. Ed. 644, 647 (1948). The indictment itself need not inform the defendant of the theory by which the state intends to prove that charge so long as the defendant receives sufficient notice to reasonably rebut the allegation. State v. Arnett, 158 Ariz. 15, 760 P.2d 1064 (1988) (in prosecution for first-degree murder, defendant given adequate notice when he learned on first day of trial that state would proceed on both premeditated and felony murder theories); cf. Blakley, 204 Ariz. 429, ¶¶ 53-56, 65 P.3d 77, ¶¶ 53-56 (defendant, indicted for first-degree murder on felony murder theory based on predicate felony of sexual assault, denied constitutionally required notice

---

[4]Under other hypothetical situations, such as that suggested by the state below in closing argument—a passenger steering a moving car consensually while the driver changes a sweater—the distinction between driving and actual physical control would be even more blurred.

when state waited until eve of closing argument to announce it was basing felony murder theory on predicate felony of child abuse). The jury need not unanimously agree on a theory so long as it unanimously agrees on a verdict. Schad v. Arizona, 501 U.S. 624, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991); State v. Salazar, 173 Ariz. 399, 844 P.2d 566 (1992).

¶13 Here, after hearing evidence that E. had said Rivera was driving, the grand jury indicted him on three, DUI-based charges, each citing § 28-1381 and accusing him of having been driving or in actual physical control. At trial, the state presented evidence that E. had initially identified Rivera as the driver, as well as the testimony of E. and A. that Rivera had been a passenger but had taken actual physical control when he grabbed the steering wheel from the passenger seat and caused the car to crash. Although E.'s and A.'s alternate version of the facts had only come to light after the grand jury hearing, Rivera had sufficient notice of the latter theory. Counsel had been aware at least twenty days before trial that E. was claiming she had been the driver, he had been aware at least three days before trial that the state would be pursuing an alternative theory of actual physical control, and he had been informed the day before trial that A. would testify consistently with E.

¶14 We find this case distinguishable from Rivera's primary authorities, State v. Martin, 139 Ariz. 466, 679 P.2d 489 (1984), and State v. Mikels, 119 Ariz. 561, 582 P.2d 651 (App. 1978). In Mikels, the grand jury indicted the defendant for an act of sodomy which took place in a shower stall. The trial evidence showed instead, and the prosecutor argued to the jury, that the defendant committed an act of sodomy in a different location at least twelve days later than the shower stall incident alleged in the indictment. This court vacated the judgment, finding "that appellant was not convicted of the crime for which he was indicted." Mikels, 119 Ariz. at 563,

8

582 P.2d at 653. Similarly, in State v. Johnson, 198 Ariz. 245, 8 P.3d 1159 (App. 2000), this court vacated convictions for sexual conduct with a minor and child molestation when the trial testimony showed entirely different sexual acts than those specified in the charging document and the trial court permitted the state to amend the information to conform to that evidence. Here, Rivera was indicted for, tried for, and convicted of one discrete crime occurring at a distinct time and place, not distinct different crimes that could have been independently prosecuted as in Mikels and Johnson.

¶15        In Martin, the indictment charged the defendant and a codefendant with selling narcotics to a third person. The prosecution's theory of the case shifted at trial to reflect the evidence, which showed only that the two defendants had engaged in narcotics transactions with each other. Our supreme court reversed, finding the defendant had not received adequate notice of this construction of the indictment, which he could not have foreseen. Martin. Here, in contrast, Rivera had ample notice that A. and E. planned to testify that E. had been driving and that the state would expand its theory of prosecution to include that scenario.

IV.

¶16        Finally, we reject Rivera's suggestion that the behavior ascribed to him by A. and E. did not constitute actual physical control for the purposes of Arizona's DUI statutes. His argument is based in large part on the "actual physical control" jury instruction we articulated in Dawley: that the defendant there "was in 'actual physical control' of the vehicle if, based on the totality of the circumstances shown by the evidence, his potential use of the vehicle presented a real danger to himself or others." Dawley, 201 Ariz. 285, ¶9, 34 P.3d 394, ¶9. We proffered this instruction as one that would be acceptable for the facts presented in Dawley, not as an all-

9

encompassing legal definition of actual physical control appropriate to all fact patterns. See footnote 1, supra. In light of the purpose of the actual physical control provision, however, we conclude that, a passenger who grabs the steering wheel of a moving car and alters the car's movement has assumed actual physical control for purposes of the DUI statutes. See Atkinson v. State, 627 A.2d 1019, 1027 (Md. 1993) (similar "actual physical control" provision encompasses "directing influence" on a vehicle); State v. Ruona, 321 P.2d 615, 618 (Mont. 1958) (same); Parker v. State, 424 P.2d 997, 1000 (Okla. Crim. App. 1967) (same); see also United States Fid. & Guar. Co. v. Hokanson, 584 P.2d 1264, 1267 (Kan. Ct. App. 1978) (where accident resulted from front-seat passenger's suddenly pulling on steering wheel, causing driver to lose control of vehicle, "[b]y grabbing the wheel and exerting a force on it, [the passenger] obtained control of the vehicle, even though for only an instant").

¶17      We affirm the judgments of conviction and the probationary terms imposed.


                                                    _____
                                                    PHILIP G. ESPINOSA, Chief Judge

CONCURRING:



_____
JOHN PELANDER, Presiding Judge



_____
PETER J. ECKERSTROM, Judge


10