202 P.3d 489

**The STATE of Arizona, Appellee,**

v.

**Vincent ZARAGOZA, Appellant.**

**No. 2 CA–CR 2007–0117.**

Court of Appeals of Arizona, Division 2, Department B.

July 23, 2008.

Review Granted Feb. 10, 2009.

Terry Goddard, Arizona Attorney General By Kent E. Cattani and Kathryn A. Damstra, Tucson, Attorneys for Appellee.

Jack L. Lansdale, Jr., Tucson, Attorney for Appellant.

## OPINION

ECKERSTROM, Presiding Judge.

¶ 1 Appellant Vincent Zaragoza was convicted after a jury trial of aggravated driving under the influence of an intoxicant (DUI) with a suspended or revoked license, and aggravated driving with a blood alcohol concentration (BAC) of .08 or more with a suspended or revoked license. The trial court suspended the imposition of sentence, committed Zaragoza to the Arizona Department of Corrections for a four-month term, and placed him on a consecutive, five-year term of probation. On appeal, Zaragoza argues the trial court erred in instructing the jury on the definition of "actual physical control" of a vehicle. Because we agree the jury instruction was erroneous and that the error was not harmless, we reverse.

¶ 2 We view the facts in the light most favorable to upholding the convictions. *State v. Cox,* 214 Ariz. 518, ¶ 2, 155 P.3d 357, 358 (App.2007), *aff'd,* 217 Ariz. 353, 174 P.3d 265 (2007). On April 29, 2006, at approximately 3:00 a.m., Tucson Police Officer Daniel Barry responded to an emergency call at an apartment complex. There, he observed one person outside yelling and another person, later identified as Zaragoza, walking toward a vehicle. Zaragoza was unable to maintain his balance, and he was holding onto other vehicles as he walked and got into a car parked in the lot. Officer Barry pulled his vehicle directly behind the car occupied by Zaragoza.

¶ 3 When Barry shined the flashlight inside the car, he saw Zaragoza sitting up in the driver's seat with one hand on the steering wheel and the other putting the key in the ignition. Zaragoza had neither turned the key nor started the engine. Barry instructed Zaragoza to get out of the car, and Zaragoza complied. A record's check revealed that Zaragoza's license had been revoked, and a breath test indicated Zaragoza's BAC was .357. Zaragoza later testified he had only intended to sleep in the car after having an argument with a female companion. He claimed he put the keys in the ignition to roll down the window and turn on the radio and that he had no intention to drive.

¶ 4 A Pima County grand jury charged Zaragoza with two counts of DUI, in violation of A.R.S. § 28-1383(A)(1), which prohibits a person with a suspended or revoked license from "driving or [being in] actual physical control [of a vehicle] while under the influ-

ence of intoxicating liquor." [1]  At trial, the court instructed the jury as follows:

> The defendant is in actual physical control of the vehicle if, based on the totality of the circumstances shown by the evidence, his *potential use* of the vehicle presented a real danger to himself or others at the time alleged.

(Emphasis added.)  The court further provided a list of factors the jury could consider or disregard when determining whether Zaragoza had controlled the vehicle,[2] but it emphasized that jurors should consider the "totality of the circumstances" to determine whether he had violated the law.  Zaragoza contends the phrase "potential use" in the instruction defining the crime was overly broad and allowed the jury to find him guilty based on his having committed acts that the legislature did not intend to criminalize.

¶ 5 We review a jury instruction given by a trial court over a defendant's objection for an abuse of discretion. *State v. Johnson,* 205 Ariz. 413, ¶¶ 7, 10, 72 P.3d 343, 346, 347 (App.2003).  "An abuse of discretion includes an error of law." *State v. Rubiano,* 214 Ariz. 184, ¶ 5, 150 P.3d 271, 272 (App. 2007).  And, whether a jury instruction correctly states the law is a legal question we review de novo. *State v. Morales,* 198 Ariz. 372, ¶ 4, 10 P.3d 630, 632 (App.2000).  A trial court does not abuse its discretion by providing instructions that, viewed in their entirety, adequately reflect the law. *See State v. Gallegos,* 178 Ariz. 1, 10, 870 P.2d 1097, 1106 (1994).  However, if a conviction was the product of a defective instruction that misled the jury, we must reverse. *See State v. Johnson,* 155 Ariz. 23, 26, 745 P.2d 81, 84 (1987); *Johnson,* 205 Ariz. 413, ¶ 10, 72 P.3d at 347.

¶ 6 Because the legislature has not defined the phrase "actual physical control," our courts have repeatedly addressed its application in the context of particular factual scenarios. *See State v. Rivera,* 207 Ariz. 69, ¶ 9, 83 P.3d 69, 72 (App.2004) (reviewing Arizona cases applying "actual physical control" language).  Our supreme court has declined to set forth any bright-line rule for defining "actual physical control" based on the impaired person's specific actions, choosing instead a "totality of the circumstances" approach. *State v. Love,* 182 Ariz. 324, 326–27, 897 P.2d 626, 628–29 (1995) (rejecting suggestion that cases should turn on whether engine is running and vehicle is pulled entirely off the road).

¶ 7 In addressing the propriety of the instruction that was given here, we presume the legislature deliberately used the phrase "actual physical control," intending each word to be given its natural and obvious meaning. *See State v. Jones,* 188 Ariz. 388, 392, 937 P.2d 310, 314 (1997) ("We assume that the legislature accords words their natural and obvious meanings unless otherwise stated."); *In re Manny,* 211 Ariz. 301, ¶ 10, 120 P.3d 1111, 1114 (App.2005) (legislature presumed to intend each word and clause to have meaning); *Odle v. Shamrock Dairy of Phoenix,* 7 Ariz.App. 515, 518, 441 P.2d 550, 553 (1968) ("The legislature is presumed to express its meaning as clearly as possible . . . .").  By this standard, we conclude the trial court erred when it instructed the jury that it could find Zaragoza guilty based on his "potential use" of a vehicle.

¶ 8 The statute criminalizes only "actual" control—not "potential" use.  The operative words have opposite meanings. *See The American Heritage Dictionary* 77, 970 (2d college ed. 1991) (defining "actual" as "[b]e-

---

1. Count one was based on "actual physical control of a vehicle" while impaired to the slightest degree, pursuant to A.R.S. § 28–1381(A)(1); count two was based on "actual physical control of a vehicle" with a BAC of .08 or more, in violation of A.R.S. § 28–1381(A)(2).

2. Specifically, the trial court stated:

   Factors to be considered in any given case might include, but are not limited to: No. 1, whether the vehicle was running or the ignition was . . . on; No. 2, where the key was located; No. 3, where and in what position the driver was found in the vehicle; No. 4, whether the person was awake or asleep; No. 5, whether the vehicle's headlights were on; No. 6, where the vehicle was stopped . . . in the road or legally parked; No. 7, whether the driver had voluntarily pulled off the road; No. 8, time of day and weather conditions; No. 9, whether the heater or air conditioner was on; No. 10, whether the windows were up or down; and, No. 11, any explanation of the circumstances advanced by the parties.

ing, existing, or acting at the present moment" and "potential" as "[c]apable of being but not yet in existence"); *see also Jones,* 188 Ariz. at 392, 937 P.2d at 314 ("A dictionary may define a word's natural and obvious meaning."). Indeed, many impaired adults have ready access to a vehicle, and therefore the potential use of one, but retain the sound judgment not to drive. Had the legislature intended § 28–1383(A)(1) to more broadly reach those impaired persons merely at risk to control a vehicle, we believe it would have inserted specific language so indicating. *See State v. Hamblin,* 217 Ariz. 481, ¶¶ 11, 13, 176 P.3d 49, 52–53 (App.2008) (rejecting limiting interpretation of statute unsupported by public policy logic where legislature could have amended definitions to achieve same effect). Rather, by its plain terms, the statute renders it a crime to commit a specific act while impaired—actually physically controlling a vehicle.

¶ 9 The jurors were not required to credit Zaragoza's version of the events or his motivations. But they reasonably could have interpreted the "potential use" instruction as requiring them to find Zaragoza guilty even if they accepted his claim that he had intended to use the vehicle exclusively as a stationary shelter in order to sleep until sober, a circumstance that would not support a guilty verdict under our settled law. *See Love,* 182 Ariz. at 326–27, 897 P.2d at 628–29. As we suggested above, an impaired person in possession of car keys within a vehicle, however motivated, always has the "potential" to use the vehicle in ways that present "a real danger to himself or others at the time alleged." But a person has not committed an offense until that person creates such a danger by actually physically controlling a vehicle.

¶ 10 The state argues that, because the legislature clearly intended to allow officers to stop impaired drivers before they actually drive, it necessarily intended to criminalize a person's "potential" use of a vehicle while impaired. But nothing suggests the legislature intended to punish potential acts. Rather, the language it chose suggests it intended to punish actual behavior that creates a *po-*

*tential for harm.* *See id.* (recognizing legislative goal to prevent threat of harm to public). Because the instruction could have been interpreted by the jurors as requiring them to find Zaragoza guilty based on control of his vehicle he *might* have hypothetically exercised but never *did,* that instruction was erroneous. We cannot find the error harmless and must reverse Zaragoza's convictions. *See Johnson,* 205 Ariz. 413, ¶ 27, 72 P.3d at 351 (instructional error is harmless only if court "can conclude beyond a reasonable doubt that it did not influence the verdict").

¶ 11 In the event this case proceeds to a second trial, the trial court will have the task of formulating an instruction which appropriately defines the scope of the actions our legislature intended to reach when it prohibited "actual physical control" of a vehicle while impaired. Our supreme court has observed that the statute had " 'the obvious . . . aim of enabling the drunken driver to be apprehended before he maims or kills himself or someone else,' " *Love,* 182 Ariz. at 327, 897 P.2d at 629, *quoting State v. Lawrence,* 849 S.W.2d 761, 765 (Tenn.1993), but was not designed to criminalize an impaired person's mere use of a vehicle as a "stationary shelter." *Id.* at 326, 897 P.2d at 628; *see also State v. Zavala,* 136 Ariz. 356, 359, 666 P.2d 456, 459 (1983) (interpreting "actual physical control" language as encouraging impaired drivers to pull over and sleep until sober). Because a jury reasonably could interpret the unvarnished statutory language as requiring a conviction under both of those circumstances, this court has struggled to develop an instruction to give jurors additional guidance. *See State v. Dawley,* 201 Ariz. 285, ¶ 9, 34 P.3d 394, 397 (App.2001) (rejecting instruction that focuses on "apparent ability to start and move a vehicle"); *see also State v. Rivera,* 207 Ariz. 69, ¶ 16, 83 P.3d 69, 74 (App.2004) (rejecting use of *Dawley's* "potential use" instruction "as an all-encompassing legal definition of actual physical control appropriate to all fact patterns"). Ultimately, the courts of this state have yet to articulate an instruction on actual physical control that would be readily applicable to all cases.[3]

---

**3.** For this reason, we understand the challenge faced by the trial court in developing a workable

instruction. And, we acknowledge that we have reversed the trial court for utilizing an instruc-

¶ 12 Accordingly, any instruction must account for the statute's clear intent to criminalize an impaired person's actual control of a vehicle under circumstances that could not yet be characterized as driving—or else the legislature's prohibition of "actual physical control" would have little meaning. *See State v. Pitts,* 178 Ariz. 405, 407, 874 P.2d 962, 964 (1994) ("We presume the legislature did not intend to write a statute that contains a void, meaningless, or futile provision."). On the other hand, the instruction must convey that our legislature did not intend to criminalize those inebriated people who have exercised control over their vehicles, without driving, for the exclusive purpose of using them as stationary shelters.

¶ 13 In attempting to fashion a principled standard for distinguishing the control the legislature intended to prohibit from that it intended to allow, our courts have repeatedly focused their analyses on whether a defendant's control of the vehicle posed a danger to himself or others. *See Love,* 182 Ariz. at 326, 897 P.2d at 628 ("[T]he trier of fact should be entitled to examine all available evidence ... in determining whether defendant ... actually posed a threat to the public."); *see also Rivera,* 207 Ariz. 69, ¶ 9, 83 P.3d at 72 ("These cases broadly demonstrate that by including 'actual physical control,' the legislature intended to extend the DUI statutes to encompass those situations in which a person who is not actually driving nonetheless poses an equivalent risk."); *Dawley,* 201 Ariz. 285, ¶¶ 8–9, 34 P.3d at 397–98 (rejecting "apparent ability" instruction because it failed to focus jury on whether a defendant presented danger to himself or others). Although we do not question this approach in those cases, use of that criteria in an instruction could, in other cases, lead to results inconsistent with legislative intent. For example, a slightly impaired person, who undisputedly asserted physical control of a vehicle with the purpose of driving it, might be erroneously acquitted by a jury who con-

cluded he posed no real danger because his impairment was comparatively minor and he intended only to drive a few blocks home on deserted streets. But implicit in § 28–1383(A)(1), and the statutory scheme for our state's DUI laws, is a legislative judgment that an impaired person's actual physical control of a vehicle is sufficiently dangerous under all circumstances so as to constitute a crime. Thus, while our statutes contain enhanced punishments for extreme impairment, *see* A.R.S. § 28–1382, they contain no safe harbors for the impaired driver who either drives, or actually physically controls, a vehicle under circumstances suggesting the danger to the defendant or others is comparatively remote. *See, e.g.,* A.R.S. § 28–1381(A)(1) (unlawful for person to drive or be in actual physical control of vehicle if "impaired to the slightest degree").

¶ 14 At least under the facts presented here, any instruction defining the scope of the crime must focus on the totality of the circumstances and what they demonstrate about the defendant's purpose in exercising control of the vehicle. More specifically, we believe the legislature intended to criminalize an impaired person's control of a vehicle when the circumstances of such control—as actually physically exercised—demonstrate an ultimate purpose of placing the vehicle in motion or directing an influence over a vehicle in motion. *See Love,* 182 Ariz. at 327, 897 P.2d at 629 (actual physical control suggesting imminent purpose to drive criminalized under statute); *Rivera,* 207 Ariz. 69, ¶ 11, 83 P.3d at 73 (passenger grabbing steering wheel of car has exercised actual physical control).

¶ 15 Reversed.

CONCURRING: PHILIP G. ESPINOSA and GARYE L. VÁSQUEZ, Judges.

---

tion we specifically recommended in a previous case. *See State v. Dawley,* 201 Ariz. 285, ¶ 9, 34 P.3d 394, 397–98 (App.2001). But, in *State v. Rivera,* 207 Ariz. 69, ¶ 16, 83 P.3d 69, 74 (App. 2004), we also cautioned courts against utilizing the *Dawley* instruction for all fact patterns. Although we recognize that trial courts must often

refer to case law to craft accurate legal instructions for the jury, we emphasize that instructions must be fashioned in light of the specific factual issues relevant to the trial at hand. As here, an instruction appropriate for one set of issues might mislead a jury in another context.