NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MIBHAR ELIASHIB GARCIA EL, *Appellant.*

No. 1 CA-CR 22-0161
FILED 4-18-2023

Appeal from the Superior Court in Maricopa County
No. CR2020-142476-001
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Damon A. Rossi
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

**F O S T E R**, Judge:

**¶1**     Defendant Mibhar Garcia El appeals his convictions and sentences for possession or use of narcotic drugs and misconduct involving weapons. Because he has shown no reversible error, the convictions and sentences are affirmed.

### FACTS AND PROCEDURAL HISTORY

**¶2**     On the evening of November 9, 2020, Mesa Police received a 9-1-1 call for a possible abandoned vehicle parked near a gated driveway near the intersection of South Country Club Drive and West Hampton Avenue. A responding officer positioned his unmarked car behind the alleged abandoned vehicle so he could run the license plate in his system. Shortly after, the vehicle started moving westbound towards Country Club. Officers later learned Garcia El was driving the vehicle, which he also owned. Garcia El then "proceeded to turn southbound onto Country Club and then cut across all lanes of traffic for southbound." After witnessing Garcia El's left turn, the officer activated his car's sirens and lights, and Garcia El pulled over.

**¶3**     Other officers then arrived at the scene. While talking to Garcia El, the officer could smell unburned marijuana.[1] Another officer present at the scene, who was talking to the passenger, indicated that he, too, could smell marijuana and that he could see marijuana inside the passenger side of the vehicle. The officers then searched Garcia El and his vehicle. They found a gun in Garcia El's pocket. Inside the vehicle, they found a backpack, which contained Garcia El's personal mail, marijuana,

---

[1]     At the time of the traffic stop, marijuana was not yet legal for recreational use in Arizona. *See* A.R.S. § 36–285 (effective: November 30, 2020). The record does not show that Garcia El possessed a medical marijuana card that qualified him to possess marijuana. *See* A.R.S. § 36–2801(15).

cocaine, a digital scale, and other packaging material. They then arrested Garcia El.

¶4        The State charged Garcia El with possession or use of narcotic drugs and misconduct involving weapons.[2] Before trial, Garcia El moved to suppress all evidence obtained from the search. Garcia El argued that the stop was pretextual, and thus all evidence obtained as a result of the stop must be excluded under the fruit-of-the-poisonous-tree doctrine. The State responded that the officers had a reasonable suspicion to conduct a stop under *Terry v. Ohio*, 392 U.S. 1 (1968), because of the 9-1-1 call describing Garcia El's vehicle as abandoned. It also argued that Garcia El's wide left turn, which constituted a traffic violation, gave the officers additional cause to stop the vehicle.

¶5        At the hearing on the motion to suppress, defense counsel asked the trial court, "[W]ho would you like to hear from first? Mr. Garcia?" The trial court responded, "Right. It's his motion." Garcia El testified that he was parked in the driveway for about 20 minutes. He never left the vehicle during that period and started driving away because he felt that he was being followed. As he drove away, he turned on his blinker to make a left-hand turn from the driveway onto Country Club. He then crossed the oncoming traffic lanes and entered the center lane. Finally, he switched on his blinker, merged into the immediate lane to his right, and then moved over to the far-right lane.

¶6        The first responding officer testified that Garcia El "merged across all lanes of traffic and he did not pull into the lane that he should have pulled into, which would have been the immediate open lane." He also testified that Garcia El was parked in the private driveway and that the area was a "high drug and high violent crime area." He described the driveway as about 75 to 100 yards long with a median divider in the middle. He testified that even if Garcia El had not committed the traffic violation, he would have still pulled over the vehicle "[b]ased on the suspicious activity of [him] being parked again in a high crime area."

¶7        The trial court denied the motion to suppress. It found that "based on the totality of circumstances from the initial contact with the defendant's car, to the turn onto Country Club, the police officers did

---

[2]        The State also charged Garcia El with (1) possession of marijuana for sale, (2) felony misconduct involving weapons, and (3) use or possession of drug paraphernalia. These counts were dismissed before trial on the State's motion.

develop a reasonable suspicion that the defendant violated the law by making the wide turn onto Country Club." It also found that Garcia El "was not entirely credible in his testimony."

**¶8**     Garcia El also moved to preclude all evidence related to the dismissed counts. The trial court granted the motion as to "the marijuana found in the car and backpack, [] the paraphernalia other than the digital scale and packing materials," and "any testimony about the sm[e]ll of marijuana or the sale of marijuana." It admitted the digital scale and the packaging material "solely for the purpose of showing knowledge."

**¶9**     At trial, the State elicited testimony from officers about the scales and their common use in drug transactions. The first responding officer testified that in his almost 22 years of experience as a police officer, "[i]t's very common for drug users and on both sides of the spectrum to utilize a scale." Another officer testified that in his experience, "most people in fact in the drug world [] will bring scales with them regardless of what side of a transaction they're on to make sure that they are getting what they -- in a user's case what they paid for, what they're paying for." During its closing argument, the prosecutor relied on testimony about the scales to argue that Garcia El knowingly possessed cocaine.

**¶10**     After a three-day trial, the jury convicted Garcia El of both charges. The trial court suspended the sentence and placed Garcia El on supervised probation for two years. Garcia El timely appealed.  This Court has jurisdiction pursuant to A.R.S. §§ 12‑120.01(A)(1), 13‑4031 and 13‑4033(A).

### DISCUSSION

### I.    Reasonable Suspicion

### a.  Motion to Suppress

**¶11**     Garcia El argues that the trial court erred in placing the burden of persuasion on him after he had established a prima facie case that the evidence taken should be suppressed. A denial of a motion to suppress is reviewed for abuse of discretion "if it involves a discretionary issue, but review constitutional issues and purely legal issues de novo." *State v. Gay*, 214 Ariz. 214, 217, ¶ 4 (App. 2007).

**¶12**     Under Arizona Rule of Criminal Procedure ("Rule") 16.2(b), a defendant who "moves to suppress evidence that the state has obtained under defined circumstances," bears "the burden of going forward." *State*

*v. Hyde*, 186 Ariz. 252, 266 (1996). The defendant must "produce sufficient preliminary evidence *before* the party with the burden of persuasion must proceed with its evidence." *Id*. The trial court, however, must "exercise reasonable control over the mode and order of examining witnesses and presenting evidence. . ." Ariz. R. Evid. 611(a).

¶13        Here, the trial court was simply exercising reasonable control over the mode and order of examining witnesses. *See* Ariz. R. Evid. 611(a). During the hearing, defense counsel asked the trial court, "[W]ho would you like to hear from first? Mr. Garcia?" And the trial court responded, "Right. It's his motion." Thus, defense counsel offered that Defendant testify first. The trial court did not compel Garcia El to present evidence first in support of his motion; nor did it place the burden of persuasion on him. The trial court followed the order of witnesses as suggested by the defense counsel's offer that Defendant testify first.

¶14        Even if the trial court's order of examining witnesses was an error, reversal is not warranted because the error was harmless. After Defendant's testimony, the trial court declined the State's request to deny Defendant's motion because he had not met the burden of going forward and heard from the State's witnesses. By doing so, the trial court implicitly found that Defendant had met his burden of moving forward and that it was the State's turn to proceed with its evidence to meet its burden of persuasion. Also, in denying Defendant's motion to suppress, the trial court found that "based on the totality of circumstances . . . the police officers did develop a reasonable suspicion that the defendant violated the law by making the wide turn onto Country Club." The record supports the trial court's finding. But even if the trial court erred, the error was harmless.

## b. A.R.S. § 28–751(2)

¶15        Garcia El argues that the trial court erred in finding that reasonable suspicion existed for the stop because (1) A.R.S. § 28–751(2) did not apply to his left turn, and (2) the responding officer's mistaken interpretation of the statute was not objectively reasonable. Because Defendant failed to object on these specific grounds, review is "solely for fundamental error." *See State v. Lopez*, 217 Ariz. 433, 435, ¶ 4 (App. 2008). Interpretation and application of statutes is reviewed *de novo*. *State v. Patterson*, 222 Ariz. 574, 575, ¶ 5 (App. 2009).

¶16        A police officer needs reasonable suspicion of a traffic violation to justify a traffic stop under the Fourth Amendment to the United

States Constitution. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). As to left turns, the statute provides:

> The driver of a vehicle intending to turn left shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of the vehicle. If practicable the driver shall make the left turn from the left of the center of the intersection and shall make the turn to the left lane immediately available for the driver's direction of traffic.

A.R.S. § 28–751(2).

**¶17** The trial court did not err in finding that reasonable suspicion existed for the stop. Section 28–751(2) is reasonably susceptible to the interpretation that a driver turning from a private driveway onto a public roadway is turning at an intersection. *See State v. Bouck*, 225 Ariz. 527, 530, ¶ 11 (App. 2010) (holding that A.R.S. § 28–751(1), which governs right turns, applies when "a driver is turning from a private driveway onto a public roadway"). Also, as Garcia El points out, no Arizona court has directly construed this provision. The responding officer's interpretation of the statute was objectively reasonable.

**¶18** Finally, although Defendant argues on appeal that A.R.S. § 28–751(2) is unambiguous, during the suppression hearing, he described it as "complicated and convoluted." It was thus objectively reasonable for the responding officer to think that Garcia El's turn from the driveway onto the public roadway was not proper under the law. *See Heien*, 574 U.S. at 68 (holding that police officer had reasonable suspicion when he made an objectively reasonable mistake of law as to ambiguous statutory language not previously construed by the courts). Here, even if an actual violation had not occurred, the responding officer's reading of the statute provided reasonable suspicion of a violation of A.R.S. § 28–751(2) to justify the stop. As a result, Garcia El has shown no error.

## II. The Digital Scale

**¶19** Garcia El challenges the trial court's ruling admitting the digital scale in evidence on several grounds. Each argument is addressed below. The trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *State v. Tucker*, 215 Ariz. 298, 313, ¶ 46 (2007). This court defers to the trial court's assessment of relevance and unfair prejudice. *State v. Via*, 146 Ariz. 108, 122 (1985).

¶20        Defendant first argues that the digital scale constituted impermissible other act and propensity evidence. The State argues that the scale was relevant to prove cocaine possession and was admissible as intrinsic evidence. Although Garcia El argues the State failed to preserve the intrinsic evidence argument in superior court, the State argued that evidence of the scale was offered "to establish the defendant's knowledge of the cocaine within his backpack." Thus, the State sufficiently preserved the argument.

¶21        "[E]vidence is intrinsic in Arizona if it (1) directly proves the charged act, or (2) is performed contemporaneously with and directly facilitates commission of the charged act." *State v. Ferrero*, 229 Ariz. 239, 243, ¶ 20 (2012). To prove the charged act of cocaine possession, the State had to show that Garcia El knowingly possessed cocaine. *See* A.R.S. § 13–3408. The bag of cocaine and the scale were found inside Garcia El's backpack. And evidence of the scale was relevant to show that Garcia El knowingly possessed the cocaine.

¶22        Next, Garcia El argues that the trial court erred in admitting the scale because the State's notice was untimely. "The indictment itself need not inform the defendant of the theory by which the state intends to prove that charge so long as the defendant receives sufficient notice to reasonably rebut the allegation." *State v. Rivera*, 207 Ariz. 69, 73, ¶ 12 (App. 2004). Garcia El argues that the charging document gave him notice that the State intended to use the scale for the marijuana-related charges, but not the cocaine possession charge. And the State's Rule 15.1(b) disclosure, which was unchanged after the State dismissed the other charges, noted that it "may introduce into evidence" the scale. As a result, the State provided adequate disclosure.

¶23        Garcia El also argues that the trial court erred in admitting the scale because it was not relevant to the cocaine possession charge. Evidence is relevant if it tends to make a fact of consequence more or less probable. *See* Ariz. R. Evid. 401. The standard of relevance "is not particularly high." *State v. Oliver*, 158 Ariz. 22, 28 (1988). Here, as explained above, *supra* ¶ 19, the record supports the finding that the digital scale tended to prove that Garcia El knowingly possessed the cocaine. The scale therefore was relevant, and the trial court did not err in admitting it.

¶24        Finally, Garcia El argues that even if the scale was relevant, it presented "unnecessary cumulative evidence on the issue" because the mail found in the backpack was more compelling and less inflammatory evidence than the scale. But Rule of Evidence 403 does not mandate the

exclusion of relevant evidence when other evidence is claimed to be more compelling. Nor has Garcia El shown that the superior court abused its discretion in overruling his objection that the scale should be precluded under Arizona Rule of Evidence 403.

## III.    Profile Evidence

**¶25**         Defendant argues that the State's reliance on the scale and the testimony about the use of scales in drug transactions constituted impermissible profile evidence. Because Defendant did not object to this evidence at trial, this court will not reverse unless the error was fundamental and prejudicial. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018); *Lopez*, 217 Ariz. at 435, ¶ 4.

**¶26**         "Profile evidence tends to show that a defendant possesses one or more of an informal compilation of characteristics or an abstract of characteristics typically displayed by persons engaged in a particular kind of activity." *State v. Ketchner*, 236 Ariz. 262, 264, ¶ 15 (2014) (cleaned up). Profile evidence may not be used to show guilt because "[i]t creates too high a risk that a defendant will be convicted not for what he did but for what others are doing." *State v. Cifuentes*, 171 Ariz. 257, 257 (App. 1991).

**¶27**         Here, Garcia El has not shown that the testimony about the use of scales in drug transactions was error. "Expert testimony about general behaviors is permitted if helpful to a jury's understanding of the evidence." *Escalante*, 245 Ariz. at 143, ¶ 25; *see also State v. Carreon*, 151 Ariz. 615, 617 (App. 1986). Here, the qualified officers explained that scales, like the one found in Garcia El's vehicle, can be used to weigh drugs being bought or sold. They did not, however, testify that the scale and the packing materials, together with other behaviors, were consistent with drug trafficking. *See Escalante*, 245 Ariz. at 143, ¶ 25. Similarly, the prosecutor, in closing, argued that the presence of the scale suggested that Defendant knew of the cocaine in his backpack. The prosecutor's reliance on the scale complied with the limited purpose for which the trial court admitted the scale—to show knowledge. Thus, Garcia El has shown no error.

## CONCLUSION

¶28 For the reasons stated, Garcia El's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: CC