897 P.2d 626

**STATE of Arizona, Appellee,**

v.

**Victor Scott LOVE, Appellant.**

**No. CR–94–0280–PR.**

Supreme Court of Arizona.

June 27, 1995.

---

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel Crim. Appeals Section and Rory L. Whipple, Asst. Atty. Gen., Phoenix, for appellee.

Law Office of Mark N. Weingart by David Michael Cantor, Tempe, for appellant.

## OPINION

ZLAKET, Justice.

At approximately 8:30 a.m. on September 19, 1992, an Arizona Department of Public Safety officer found appellant Love's car stopped, with its engine still running, in the northbound emergency lane of Interstate 17. The vehicle was parked at a slight angle to the roadway, and it first appeared that no one was inside. When the officer approached, however, he found Mr. Love asleep, lying with his head near the passenger door and his legs underneath the steering wheel. The officer eventually awakened appellant after several attempts that included calling to him through the open windows, activating the police car's siren, and physically shaking him. Appellant sat up and immediately reached for the vehicle's gearshift. The officer then persuaded him to move over to the car's passenger side and turn off the ignition.

Detecting an odor of alcohol, the officer administered field sobriety tests. He reported that appellant's performance was poor. He also noted that his speech was slurred and his eyes were bloodshot. Based on the foregoing, the officer arrested appellant for driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor (DUI). When they arrived at the police station, Mr. Love refused to take a breath test.

After appellant waived his right to a jury trial and agreed to a stipulated set of facts, the trial court found him guilty of DUI. It sentenced him to 3 years probation, the terms of which included a 6 month jail sentence. The court of appeals affirmed by memorandum decision. We granted review.

A.R.S. § 28–692 provides, in part, that it "is unlawful for any person to drive or be in actual physical control of any vehicle ... [w]hile under the influence of intoxicating liquor" if that person is impaired to the "slightest degree," or to have "an alcohol concentration of 0.10 or more within two hours of driving or being in actual physical control of the vehicle." Although the legislature did not define "actual physical control," this court has held that the phrase may, under some circumstances, apply to persons who are not at the time driving or otherwise putting a vehicle in motion. *See, e.g., State v. Webb*, 78 Ariz. 8, 11, 274 P.2d 338, 340 (1954) (defendant found sleeping inside a truck that was stopped in a traffic lane, with its bright lights on and engine running).

In *State v. Zavala*, 136 Ariz. 356, 666 P.2d 456 (1983), the defendant was found asleep and partly hanging out of the driver's side window of his truck, which was parked in the emergency lane of Interstate 10. Both he and the vehicle smelled of alcohol. Although the key was in the ignition, the truck's engine was not running. The defendant claimed he was not in actual physical control of his truck when arrested for DUI. This court found that because he had pulled over to the side of the road and turned off the ignition, he "voluntarily ceased to exercise control over the vehicle prior to losing consciousness." *Id.* at 358–59, 666 P.2d at 458–59. We also noted that "it is reasonable to allow a driver, when he believes his driving is impaired, to pull completely off the highway, turn the key off and sleep until he is sober, without fear of being arrested for being in control." *Id.*

■ Relying primarily on *Webb* and *Zavala*, the court of appeals here concluded that unless a motorist pulls completely off the travelled portion of the roadway *and* turns off the ignition, he or she cannot escape a presumption of actual physical control. *See*

*also State v. Vermuele*, 160 Ariz. 295, 297, 772 P.2d 1148, 1150 (Ct.App.1989); *State v. Superior Court*, 153 Ariz. 119, 122, 735 P.2d 149, 152 (Ct.App.1987). While it is easy to appreciate how the appellate court reached this result, we believe that such a rigid, mechanistic analysis is neither appropriate nor in keeping with the rest of our criminal jurisprudence. No valid reason has been shown why DUI cases should be accorded unique treatment. We find it preferable, as in other cases, to allow the trier of fact to consider the totality of the circumstances in determining whether defendant was in actual physical control of his vehicle.

■ Such an approach was recently adopted in Maryland. *See Atkinson v. State*, 331 Md. 199, 627 A.2d 1019 (1993). Finding that its legislature did not intend to forbid intoxicated individuals from seeking stationary shelter in their cars, the Maryland court opted for a flexible test by which fact finders could "assess potential danger based upon the circumstances of each case." *Id.* at 1025–26; *see also Cagle v. City of Gadsden*, 495 So.2d 1144, 1145 (Ala.1986); *State v. Lawrence*, 849 S.W.2d 761, 765 (Tenn.1993). Thus, a determination of actual physical control depends on a weighing of the particular facts presented rather than the application of a boilerplate formula. Factors to be considered in any given case might include: whether the vehicle was running or the ignition was on; where the key was located; where and in what position the driver was found in the vehicle; whether the person was awake or asleep; if the vehicle's headlights were on; where the vehicle was stopped (in the road or legally parked); whether the driver had voluntarily pulled off the road; time of day and weather conditions; if the heater or air conditioner was on; whether the windows were up or down; and any explanation of the circumstances advanced by the defense. *See, e.g., Atkinson*, 627 A.2d at 1027. This list is not intended to be all-inclusive. It merely serves to illustrate that in every case the trier of fact should be entitled to examine all available evidence and weigh credibility in determining whether defendant was simply using the vehicle as a stationary shelter or actually posed a threat to the public by the

exercise of present or imminent control over it while impaired. *Id.* at 1028.

■ The State urges us to perpetuate the policy enunciated in *Webb* and *Zavala* requiring drivers, at a minimum, to pull over and shut off their engines in order to demonstrate that they have voluntarily relinquished control of their vehicles. Although we agree that those factors may be important, we do not think they alone should be dispositive. It is unwise to proceed down a path on which we attempt to identify "black letter" criteria for establishing actual physical control as a matter of law in each and every case. Such an effort would invariably fail and is unlikely to serve the interests of justice in any event. A bright line test employing too few factors can easily lead to unfairly pigeonholed results, while the addition of new ones would make it increasingly difficult, if not impossible, to construct a legally sound equation for determining guilt or innocence.

On the other hand, the "totality" approach recognizes that each situation may be different and requires the fact finder to weigh the myriad of circumstances in fairly assessing whether a driver relinquished control and no longer presented a danger to himself or others. It is the method we follow in most other types of cases and is "neither so restrictive ... as to thwart the obvious statutory aim of enabling the drunken driver to be apprehended before he maims or kills himself or someone else, nor ... so expansive as to permit a conviction where clearly not warranted." *Lawrence*, 849 S.W.2d at 765.

The dissent suggests that the *Zavala* "test" may be more effective in removing impaired drivers from our highways and in keeping potential victims out of harm's way than the analysis we have advanced here. We come to quite the opposite conclusion. The totality approach permits drunk drivers to be prosecuted under a much greater variety of situations—for example, even when the vehicle is off the road with the engine not running. The drunk who turns off the key but remains behind the wheel is just as able to take command of the car and drive away, if so inclined, as the one who leaves the engine on. The former needs only an instant to start the vehicle, hardly a daunting task. Thus, we believe the step closer to driving depicted by the dissent is so small as to be illusory. Furthermore, the suggestion that an impaired motorist, stopped off the roadway, should be able to gain immunity by the simple act of turning off the ignition (perhaps even as the police car approaches) best illustrates the absurdity of an inflexible rule. Under a totality analysis, the motorist will not receive automatic absolution with such a flick of the wrist, but can still be found in "actual physical control" of the vehicle.

That the mechanical application of *Zavala* can lead to highly questionable results was demonstrated in *State ex rel. McDougall v. Superior Court*, 173 Ariz. 582, 845 P.2d 508 (Ct.App.1992), a case cited by the dissent. In *McDougall*, the defendant left a party at which he had been drinking and walked to a private parking lot where his car was located. It was February, and he started the engine so the heater would keep him warm. Defendant then fell asleep behind the wheel, where he was later found. The *undisputed* evidence was that he had not driven the car and had no intention of doing so. Because the key was on, however, his DUI conviction was reinstated by the court of appeals.[1] Had it been off, he presumably would not have been found guilty. Applying the totality test, the defendant could have been convicted or acquitted under either scenario. The decision would have been left to the finder of fact, which is where we think it properly belongs in these cases.

■ In closing, it is important for us to note that under A.R.S. § 28–692 a motorist can be convicted for either "driving" or "being in actual physical control" while under the influence of intoxicating substances. Thus, even where a defendant is determined to have relinquished actual physical control, if it can be shown that such person drove while intoxicated to reach the place where he

---

1. Because Justice Martone had been the superior court judge whose decision was overturned by the court of appeals in *McDougall*, he was compelled to recuse himself when the case came to us on a petition for review. We ultimately were forced to dismiss it because the remaining four justices were equally divided on the issue presented. *See* 174 Ariz. 343, 849 P.2d 1373 (1993).

or she was found, the evidence will support a judgment of guilt. *See State ex rel. O'Neill v. Brown,* 182 Ariz. 525, 527, 898 P.2d 474, 476 (1995). Our decision should not be read to suggest otherwise.

We hold that whether a driver had actual physical control is a question for the fact finder and should be based upon consideration of all the circumstances. We therefore vacate the memorandum decision of the court of appeals, reverse appellant's conviction, and remand the case for a new trial at which the principles set forth in this opinion shall be applied to determine his guilt or innocence.

FELDMAN, C.J., and MARTONE, J., concur.

MOELLER, Vice Chief Justice, dissenting.

I respectfully dissent. Defendant was passed out or asleep in the front seat of his car parked at an angle in the emergency lane of a controlled access highway with his car's engine running. When the police officer was finally able to rouse him, his first impulse was to put the car in gear, apparently to drive away. In my view, defendant posed an extreme danger to himself and to others using the highway. Yet, a majority of the court, employing a newly adopted "totality of the circumstances" test, today holds that defendant is entitled to a new trial and may avoid conviction altogether on the theory that he was not in actual physical control of his vehicle. *See* Ariz.Rev.Stat.Ann. § 28–692(A) (Supp.1994). Because I believe that the law does not and should not allow this result, I dissent.

The purpose of section 28–692(A) "is to deter individuals who have been drinking intoxicating liquor from operating their vehicles while in an intoxicated state. The 'actual physical control' offense is a preventative measure intended to deter the drunk driver. One who has been drinking intoxicating liquor should not be encouraged to test his driving ability on any road, where his life and the lives of other motorists are at stake." *State ex rel. McDougall v. Superior Court,* 173 Ariz. 582, 587, 845 P.2d 508, 513 (App.

1992);[2] *see also State v. Webb,* 78 Ariz. 8, 11, 274 P.2d 338, 339 (1954) (purpose of section 28–692 is preventive); *Atkinson v. State,* 331 Md. 199, 627 A.2d 1019, 1025 (1993) (same).

In keeping with the legislature's intent to prevent drunk drivers from causing harm, a person such as defendant should be considered in actual physical control of his vehicle. Such individuals have the ability to direct their vehicles in traffic at any moment and present an extreme threat to others. Defendant, in fact, tried to drive away immediately upon being revived. In *State v. Webb,* 78 Ariz. 8, 274 P.2d 338 (1954), we held that an intoxicated person found unconscious in his running vehicle, stopped on the roadway, was in actual physical control. We said, "An intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than that involved when the vehicle is actually moving, but it does exist." *Id.* at 11, 274 P.2d at 340.

In light of the purpose of the statute, it should be possible for impaired individuals to escape the law only when they have clearly and unequivocally surrendered their ability to immediately direct their vehicles into traffic. Such a case was *Zavala,* where this court carved out a narrow exception and held that a driver who had pulled his car off the road *and* who had turned off his ignition had relinquished actual physical control. *See State v. Zavala,* 136 Ariz. 356, 358–59, 666 P.2d 456, 458–59 (1983). The combination of the two circumstances was held adequate to show a relinquishment of control over the vehicle. *Id.* From *Zavala,* the court of appeals has correctly discerned a two-element test: A driver must both place his vehicle away from the traveled roadway *and* turn off his ignition in order to be found not in actual physical control of his vehicle. *State v. Superior Court,* 153 Ariz. 119, 122, 735 P.2d 149, 152 (App.1987). The court of appeals below correctly applied this test in this case in affirming defendant's conviction.

The majority today greatly broadens the narrow *Zavala* exception, concluding that it is too rigid. To the contrary, I believe the

---

**2.** We granted review in the *McDougall* case, but later dismissed it as improvidently granted for

lack of a majority to resolve the issue presented. 174 Ariz. 343, 849 P.2d 1373 (1993).

329

two-prong test created by *Zavala* is a limited, logical, bright-line rule that stays true to the legislature's intent. Each of the two factors bears heavily on an impaired individual's capacity to cause harm with his vehicle. A person seated in a vehicle with the engine running or in a lane of traffic is as close as one can get to driving without actually driving. Even the Maryland Court of Appeals, which the majority purports to follow, admits that "once an individual has started the vehicle, he or she has come as close as possible to actually driving without doing so and will generally be in 'actual physical control' of the vehicle." *Atkinson*, 627 A.2d at 1028.

Because the purpose of section 28–692(A) is to deter and apprehend those who threaten public safety, the inquiry should focus, as it has in our prior cases, on factors that bear on a defendant's apparent ability to cause harm. *See, e.g., State v. Superior Court*, 153 Ariz. at 122, 735 P.2d at 152 (holding that interests in public safety outweigh a drunk driver's interest in being comfortable). The *Zavala* factors do that. The majority, however, invites a much broader inquiry. The majority enumerates such non-exclusive factors as "whether the driver had voluntarily pulled off the road; time of day and weather conditions; if the heater or air conditioner was on; whether the windows were up or down; and any explanation of the circumstances advanced by the defense." Maj. op. at 325–326, 897 P.2d at 628–629. These factors may tend to explain *why* a person is parked by the side of the road or *why* his motor is running, but they do not help to show whether that person has the apparent ability to place his vehicle into the flow of traffic. The factors suggested by the majority are, I believe, quite beside the point. A person in a running, parked car is one step away from driving, whether the air conditioner is on or off.

Judge Noyes, in rejecting below the "totality of circumstances" test now embraced by the majority, was correct when he said that "any protection afforded individuals who drink intoxicating liquor and then attempt to drive must be narrowly construed in view of the legislative purpose of deterring such individuals from operating their vehicles at all.

We recognize the reasoning reflected in *Zavala* .... However, *Zavala* should not be unduly expanded so as to undermine the paramount goal of deterring drunk drivers from ever getting behind the wheel of their car[s] in the first place." *State v. Love*, No. 1 CA–CR 93–0525, slip op. at 8 (Ariz.App. June 2, 1994) (memorandum decision) (citations omitted). I believe the rationale of the court of appeals holds true to the legislature's intent by unambiguously imposing criminal liability upon those who continue to threaten public safety. I would affirm defendant's conviction.

CORCORAN, J., concurs.