IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KENNETH TARR, *Appellant.*

No. 1 CA-CR 12-0791
FILED 08-05-2014

Appeal from the Superior Court in Maricopa County
No. CR2012-105930-001 DT
The Honorable Jerry Bernstein, Judge Pro Tempore

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Stephen Whelihan
*Counsel for Appellant*

**OPINION**

Presiding Judge John C. Gemmill delivered the opinion of the Court, in
which Judge Andrew W. Gould and Judge Donn Kessler joined.

**G E M M I L L**, Judge:

¶1        Kenneth Tarr appeals his convictions and sentences on four counts of aggravated driving or actual physical control of a vehicle while under the influence of alcohol ("DUI").[1] He argues that the trial court erred in refusing his requested jury instructions specifically defining "actual physical control" of a vehicle as including its use as a stationary shelter. Because we conclude that the court's instructions adequately covered the issue, we affirm.

**BACKGROUND**

¶2        The evidence presented at trial, which we view in the light most favorable to upholding the verdicts, reveals the following. *State v. Carrasco*, 201 Ariz. 220, 221, ¶ 1, 33 P.3d 791, 792 (App. 2001). On January 27, 2012, two Phoenix Police Officers were investigating a suspicious vehicle on a residential street. While investigating the suspicious vehicle, the officers spotted another car parked in the street several houses down. The officers watched the other car move from the front of one house to the front of another house next door. They approached the car to find Tarr in the driver's seat with the engine running. When Tarr reached to turn off the engine, the officers noticed that his eyes were watery and bloodshot and he smelled like alcohol. After Tarr failed a Horizontal Gaze Nystagmus test and refused to complete any field sobriety tests, the officers arrested him. A blood test revealed that Tarr's blood alcohol concentration ("BAC") was .224 percent.

¶3        At trial, Tarr testified that he had a fight with his girlfriend earlier in the evening and she went to bed. According to Tarr, when he and his girlfriend fought, they would generally separate to cool down. After she went to bed, he looked for a place to sleep but the extra beds and couches had been taken by visiting children having a sleepover with his children.

---

[1] Count one alleged under A.R.S. §§ 28-1381(A)(1) and -1383(A)(1) that Tarr drove or was in actual physical control of a vehicle while under the influence and with his license suspended; count two alleged under §§ 28-1381(A)(2) and -1383(A)(1) that he drove or was in actual physical control of a vehicle while he had a BAC of .08 or more within two hours of driving and his license was suspended; count three alleged under §§ 28-1381(A)(1) and -1383(A)(2) that he drove or was in actual physical control while under the influence and after conviction for two prior DUI offenses; and count four alleged under §§ 28-1381(A)(2) and -1383 (A)(2) that Tarr drove or was in actual physical control of a vehicle while he had a BAC of .08 or more and he had been convicted of two prior DUI offenses.

Tarr said he went to sleep in the car and had started the engine so he could have heat.  Following a jury trial, Tarr was convicted on all four counts.

¶4        Under Arizona Revised Statutes ("A.R.S.") section 28-1381, Tarr could be convicted of DUI for either driving or being in actual physical control of a vehicle while under the influence of alcohol or with the requisite BAC.  There was evidence that Tarr drove his car as the officers were watching in addition to evidence that Tarr was in "actual physical control" of the car.  Because both driving and actual physical control were presented to the jury, we do not know upon which basis the jury convicted.  We must therefore consider Tarr's arguments that the jury instruction defining "actual physical control" was deficient and constituted reversible error.

¶5        Our statutes do not define what constitutes actual physical control.  Tarr requested the following instruction on actual physical control ("Modified Instruction"):

> In determining whether the defendant was in actual physical control of the vehicle, you should consider the totality of the circumstances shown by the evidence.
>
> 1.   Whether the vehicle was running;
> 2.   Whether the ignition was on;
> 3.   Where the ignition key was located;
> 4.   Where and in what position the driver was found in the vehicle;
> 5.   Whether the person was awake or asleep;
> 6.   Whether the vehicle's headlights were on;
> 7.   Where the vehicle was stopped;
> 8.   Whether the driver had voluntarily pulled off the road;
> 9.   Time of day;
> 10. Weather conditions;
> 11. Whether the heater or air conditioner was on;
> 12. Whether the windows were up or down;
> 13. Any explanation of the circumstances shown by the evidence.
>
> This list is not meant to be all-inclusive. It is up to you to examine all the available evidence and weigh its credibility in determining *whether the defendant was simply using the vehicle as a stationary shelter* or actually posed a threat to the public by the exercise of present or imminent control over it while impaired.

(Emphasis added). This Modified Instruction was similar to the instruction recommended by the Arizona Supreme Court in *State v. Zaragoza*, 221 Ariz. 49, 54, ¶ 21, 209 P.3d 629, 634 (2009), but included additional language regarding use of a vehicle as a "stationary shelter."

¶6            Tarr also requested the following instruction ("Special Instruction"):

> *The law does not forbid an individual from using a vehicle as a stationary shelter* when there is no actual threat posed to the public by the exercise of present or imminent control over it while impaired.

(Emphasis added.) The trial court refused to give either of Tarr's requested instructions, expressing (among other things) concern that the instructions might be considered comments on the evidence, and instead gave an instruction ("Given Instruction") on actual physical control that was nearly identical to the instruction recommended in *Zaragoza*, 221 Ariz. at 54, ¶ 21, 209 P.3d at 634. The Given Instruction did not include Tarr's requested language specifically authorizing using a vehicle as a "stationary shelter." The final sentence of the Given Instruction provided:

> It is up to you to determine all the available evidence in its totality and weigh its credibility[2] whether the defendant actually posed a threat to the public by the exercise of present or imminent control over it while impaired.

¶7            Tarr timely appeals and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A) (1) and 13-4033(A) (1).

## ANALYSIS

¶8            Tarr argues that his Modified Instruction and Special Instruction accurately stated the law, were supported by the evidence, and should have been given. He claims that the principle of law upon which his defense relied – that a person could use a vehicle as a stationary shelter – was not adequately covered by the Given Instruction. Although we agree that Tarr's instructions were correct statements of the law, we affirm because the Given Instruction was adequate.

---

2 The words "in determining" from the *Zaragoza* instruction were omitted here. No objection to this omission was asserted by either party.

## I.    Tarr's requested instructions accurately stated the law

**¶9**         We review the trial court's decision of whether to give an instruction for abuse of discretion. *State v. Martinez*, 218 Ariz. 421, 432, ¶ 49, 189 P.3d 348, 359 (2008). We review de novo whether the Given Instruction correctly stated the law. *See id.* Jury instructions "need only be 'substantially free from error.'" *Zaragoza*, 221 Ariz. at 53, ¶ 15, 209 P.3d at 633 (quoting *State v. Cox,* 217 Ariz. 353, 356, ¶ 15, 174 P.3d 265, 268 (2007)).

**¶10**        Tarr argues that an intoxicated person may use a vehicle as a stationary shelter without exercising actual physical control. The Arizona Supreme Court agrees. In *State v. Love*, 182 Ariz. 324, 326, 897 P.2d 626, 628 (1995), the supreme court stated that the issue of actual physical control required the trier of fact to determine "whether the defendant was simply using the vehicle as a stationary shelter, or actually posed a threat to the public by the exercise of present or imminent control over the vehicle while impaired." The court also explained that "it is reasonable to allow a driver, when he believes his driving is impaired, to pull completely off the highway, turn the key off and sleep until he is sober, without fear of being arrested for being in control." *Id.* (quoting *State v. Zavala*, 136 Ariz. 356, 358-59, 666 P.2d 456, 458-59 (1983). These statements plainly articulate that an impaired person may use a vehicle as a stationary shelter without being guilty of DUI. Although the supreme court in *Zaragoza* recommended an "actual physical control" instruction that omitted the "shelter" language, the court nonetheless cited *Love* favorably. *Zaragoza*, 221 Ariz. at 54, ¶ 21, 209 P.3d at 634. Under both *Love* and *Zaragoza*, the central inquiry is whether the defendant "actually posed a threat to the public by the exercise of present or imminent control over [the vehicle] while impaired." *Id.* (quoting *Love*, 182 Ariz. at 326-27, 897 P.2d at 628-29).

**¶11**        Contrary to the State's argument, *Zaragoza* did not reject the "shelter" language in *Love*. In *Zaragoza*, the court rejected proposed language that the jury should determine the defendant's purpose "in exercising control of the vehicle." 221 Ariz. at 54, ¶ 20, 209 P.3d at 634. This rejected language would have enabled a jury to conclude that a defendant exercised control over the vehicle and yet find him not guilty because his purpose was not to place the vehicle in motion. *Id.* Such language would be contrary to the statutory language that provided for guilt if the defendant exercised actual physical control regardless of the driver's purpose of exercising such control. *See* Ariz. Rev. Stat. (A.R.S.) § 28-1381(A). *Love*, however, distinguished the exercise of actual physical control from using a vehicle as a shelter with the disjunctive "or." *Love*, 182 Ariz. at 326-27, 897 P.2d at 628-29 (the trier of fact must determine "whether

the defendant was simply using the vehicle as a stationary shelter, *or* actually posed a threat to the public by the exercise of present or imminent control over the vehicle while impaired") (emphasis added). Under *Love*, therefore, if a defendant is using a vehicle as a stationary shelter, he is not in actual physical control for purposes of the DUI statutes. *Love* suggests that use of a vehicle as a shelter is a distinct concept from being in actual physical control within the meaning of the statutes. Determining whether a person is using a vehicle as a shelter requires the jury to make an objective determination based on the totality of the circumstances as to whether the defendant actually exercised control over the vehicle within the meaning of the DUI statutes. *See Zaragoza*, 221 Ariz. at 52, ¶ 11, 209 P.3d at 632; *Love*, 182 Ariz. at 326-27, 897 P.2d at 628-29. Because the "shelter" language in *Love* was not rejected or called into question in *Zaragoza*, it remains the law that an intoxicated person may use a vehicle as a stationary shelter and not be considered to be exercising present or imminent control over the vehicle for DUI purposes.[3]

**¶12**　　The State is incorrect in arguing that the trial court was bound to give the *Zaragoza* approved instruction and could not supplement it. The State supports its assertion by citing *State v. Parades-Solano*, 223 Ariz. 284, 292, ¶ 23, 222 P.3d 900, 908 (App. 2009). But *Parades-Solano* dealt with the reasonable doubt instruction specified in *State v. Portillo*, 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995). In *Portillo*, the Arizona Supreme Court expressly stated that "we require as a matter of state law that . . . Arizona trial courts give the reasonable doubt instruction set forth in Part C of this opinion in every future criminal case." 182 Ariz. at 596, 898 P.2d at 974. The court in *Zaragoza*, however, set forth an instruction that "*should* be used in future actual physical control prosecutions." *Zaragoza*, 221 Ariz. at 54, ¶ 21, 209 P.3d at 634 (emphasis added). The *Portillo* instruction, in contrast, is absolutely required. Furthermore, the recommended instruction in *Zaragoza* states that the list of factors is not exhaustive. *Id.* The jury must look to the totality of the circumstances in determining whether the defendant exercised actual physical control. *Id.* Thus, in an appropriate circumstance, a trial court may supplement the instruction to aid the jury as long as any additional language properly states the law. We conclude

---

[3] We also note that the court in *Love* observed that "even where a defendant is determined to have relinquished actual physical control, if it can be shown that such person drove while intoxicated to reach the place where he or she was found, the evidence will support a judgment of guilt." 182 Ariz at 327-28, 897 P.2d at 629-30.

that Tarr's requested instructions were correct statements of the law regarding actual physical control.[4]

¶13 We also conclude that Tarr's requested instructions did not constitute an improper comment on the evidence. In rejecting Tarr's proposed instructions, the trial court expressed concern that the instruction might be an improper comment on the evidence. The Arizona Constitution forbids judges from commenting on the evidence. *See* Ariz. Const. art. 6, ¶ 27. To violate this section, the "court must express an opinion as to what the evidence proves or interfere with the jury's independent evaluation of that evidence." *State v. Roque*, 213 Ariz. 193, 213, ¶ 66, 141 P.3d 368, 388 (2006) (quoting *State v. Rodriguez*, 192 Ariz. 58, 63, ¶ 29, 961 P.2d 1006, 1011 (1998)) (internal quotation marks omitted). Neither of Tarr's requested instructions commented on the evidence. The instructions merely informed the jury that it should evaluate the totality of the circumstances to determine whether Tarr was using the vehicle as a stationary shelter or exercising actual physical control. This was a correct statement of Arizona law and would not have interfered with the jury's independent evaluation of whether the facts supported Tarr's defense that he was simply using the vehicle as a place to sleep.

## II.    The trial court did not err in refusing Tarr's requested instructions

¶14 Although Tarr was entitled to an instruction on any theory reasonably supported by the evidence, *State v. Rodriguez*, 192 Ariz. 58, 61, ¶ 16, 961 P.2d 1006, 1009 (1998), a trial court is not required to give a proposed

---

[4] The fact that one of Tarr's proposed instructions omitted language from the *Zaragoza* approved instruction does not alter our conclusion. The Modified Instruction requested by Tarr omitted language from the first paragraph of the *Zaragoza* instruction that the jury should consider "whether the defendant's current or imminent control of the vehicle presented a real danger to [himself] [herself] or others at the time alleged." *Zaragoza*, 221 Ariz. at 54, ¶21, 209 P.3d at 634. This omission is not fatal, however, because the proposed instruction included similar language that the jury should determine "whether the defendant . . . actually posed a threat to the public by the exercise of present or imminent control." *Id*. Although the Modified Instruction did not repeat this concept as the *Zaragoza* instruction does, it nonetheless correctly states the law. The supreme court's recommended instruction in *Zaragoza* is, however, superior in this regard.

instruction when its substance is adequately covered by other instructions. *Id.* Jury instructions must be reviewed in their entirety when determining whether they adequately state the law. *Id.* We evaluate jury instructions in context, and we may take closing arguments into consideration in determining whether jury instructions adequately state the law. *State v. Bruggeman*, 161 Ariz. 508, 510, 779 P.2d 823, 825 (App. 1989). We will not reverse unless the instructions, taken as a whole, misled the jury. *State v. Kuhs*, 223 Ariz. 376, 384, ¶ 37, 224 P.3d 192, 200 (2010).

¶15        As already noted, the Given Instruction was nearly identical to the instruction endorsed by the Arizona Supreme Court in *Zaragoza*, 221 Ariz. at 54, ¶ 21, 209 P.3d at 634. The fact that the Given Instruction was approved by the supreme court confirms that it is an adequate statement of the law.

¶16        Contrary to Tarr's argument, the jury was entitled to conclude that he was in actual physical control because he could have driven off at any moment. In rejecting a bright line test for actual physical control, the supreme court noted in *Love* that the "drunk who turns off the key but remains behind the wheel is just as able to take command of the car and drive away, if so inclined, as the one who leaves the engine on." *Love*, 182 Ariz. at 327, 897 P.2d at 629. The court rejected the suggestion that an impaired motorist could avoid culpability simply by turning off the ignition. *Id.* These statements clearly extend potential culpability to those who can drive off at any moment. As stated in *Zaragoza* and *Love*, the fundamental issue for the jury is whether the defendant posed a threat to himself or to others through the exercise of present or imminent control. *Love*, 182 Ariz. at 326-27, 897 P.2d at 628-29; *Zaragoza*, 221 Ariz. at 54, ¶ 21, 209 P.3d at 634. Here, the evidence was sufficient to permit the jury to conclude that Tarr was in actual physical control of the vehicle because he could have driven off at any moment.

¶17        The language of the Given Instruction adequately informed the jury that Tarr could have used the vehicle as a shelter. First, the Given Instruction implies that a person can be in a vehicle but not in actual physical control. The jury was instructed to "consider the totality of the circumstances" rather than simply whether Tarr was in the car. The jury therefore could have concluded that Tarr was using the vehicle as a shelter under the totality of the circumstances and did not pose a threat to the public. Furthermore, the jury was instructed that the list of factors was not all-inclusive and it should consider any explanation of the circumstances. This language allows Tarr's explanation that he was using the car as a stationary shelter.

¶18 The appropriateness of the Given Instruction is further confirmed by Tarr's argument in closing that he was using the car as a stationary shelter. Tarr's counsel explained in closing that a person "can be in [his] car and drunk as long as [he is] not in actual physical control and creating an imminent danger to the public." Counsel further explained that a person could use a vehicle as a shelter without being in control. The Given Instruction and these closing arguments allowed Tarr to adequately present his "shelter" defense to "actual physical control." *See Bruggeman*, 161 Ariz. at 510, 779 P.2d at 825 (stating that closing arguments may be taken into account when considering the adequacy of a jury instruction).

¶19 Finally, contrary to Tarr's suggestion, the "imminent control" language of the *Zaragoza* instruction was not vague. Tarr argues that the instruction endorsed by *Zaragoza* is incoherent because *Zaragoza* ruled that there is no inquiry into intent, yet the concept of imminent control implies intent. We believe *Zaragoza* dispels this argument. *Zaragoza* stated that "any instruction on actual physical control that requires a jury to consider a defendant's *purpose in exercising control* of a vehicle incorrectly states the law." 221 Ariz. at 54, ¶ 20, 209 P.3d at 634 (emphasis added). This makes sense because a defendant is in actual physical control if the defendant exercises control and the defendant's purpose in exercising control is irrelevant. The *Zaragoza* court did not state that a defendant's intent was wholly irrelevant to the question of actual physical control, just that the defendant's purpose in exercising control should not be considered. In fact, the instruction set out in *Zaragoza* included language directing the jury to consider the defendant's state of mind with regard to pulling off the road. *Id.* at 54, ¶ 21, 209 P.3d at 634 ("Factors to be considered might include . . . [w]hether the driver had *voluntarily* pulled off the road") (emphasis added). In determining whether Tarr exercised imminent control, presumably the jury considered the plausibility of Tarr's stated purpose for being in the vehicle. Because the language of the instruction allowed Tarr to use the car as a shelter and Tarr's attorney explained this in closing, we conclude that the instruction did not mislead the jury.

## CONCLUSION

¶20 The evidence at trial was sufficient to support the jury's verdict based on Tarr driving the vehicle or being in "actual physical control" as defined in the Given Instruction while under the influence or with the requisite BAC. No reversible error occurred. We therefore affirm Tarr's convictions and sentences.

